**STATE of Missouri, Respondent,**

v.

**Jeffrey THURMAN, Appellant.**

**No. ED 90806.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 23, 2008.

Irene Karns, Office of the Missouri Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, for Respondent.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Jeffrey Thurman (Defendant) appeals from the trial court's judgment, following a jury trial, convicting him of first-degree child molestation, in violation of Section 566.067, RSMo 2000,[1] and first-degree statutory sodomy, in violation of Section 566.062. The trial court sentenced Defendant to 15 years of imprisonment for the first-degree child molestation charge and 50 years of imprisonment for the first-degree statutory sodomy charge, to run consecutively. We affirm.

## Background

On October 12, 2007, the State of Missouri (State) in Washington County charged Defendant by Amended Information, in connection with his actions directed toward his 10–year–old stepdaughter, B.D.P. (Victim), with one count of first-degree child molestation, in violation of Section 566.067, and one count of first-

degree statutory sodomy, in violation of Section 566.062. Defendant's trial by jury took place on October 18, 2007. During the guilt phase of the jury trial, Defendant did not present any evidence in his defense; during the sentencing phase of trial, Defendant presented one witness. The following evidence was presented at trial.

## Guilt Phase of Trial

In December 2000, Defendant was living in Irondale with his wife (Mother) and two of his wife's children, an eight-year-old boy and ten-year-old Victim. Victim testified at trial that her mother had gone on vacation to Florida while she and her brother stayed with Defendant. It was the first time Victim had not been with one of her natural parents. Victim was in her bedroom at night and felt scared by the wind rattling her windows. She went downstairs where Defendant was lying on the couch watching television and told him that she missed her mom. Defendant told Victim to lie with him on the couch.

Victim followed Defendant's instruction, lying with her back to Defendant's stomach. After a couple of minutes, Victim felt Defendant's hand go up her shirt, rubbing her breasts under her shirt. Then Defendant put his other hand down Victim's pants, rubbing her vagina under her clothing. Victim testified that Defendant did not say anything to her, but was breathing hard in her ear. Victim said she wondered why Defendant was doing this because it was something that her parents were supposed to do with each other. This continued for a few minutes until Victim got up from the couch, said, "I'm not my mom," and went upstairs to bed.

Victim testified that although Defendant's actions bothered her, she did not know it was important to tell anyone.

---

1. All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

About two years later, when Victim was at a friend's house and one of the girls there began talking about how she had been molested, Victim told them that the same thing had happened to her. Her friend's mother took Victim home so she could tell her mother and a police report could be made. When Mother heard Victim's accusations, however, she would not allow Victim to go to the police because she was afraid the State would take her children away from her. Victim's mother was separated from Defendant at that time, but not divorced yet.

A couple of years later, Victim felt depressed and was contemplating suicide. She testified that she felt damaged, which stemmed from Defendant's actions toward her. Mother took Victim to counseling. Victim told her counselor that Defendant had abused her. The counselor was required by law to report the allegation of abuse to the Children's Division (formerly Division of Family Services).

Emily Goyea (Ms. Goyea), a child abuse and neglect hotline investigator with the Children's Division in Franklin County, testified that the Children's Division received information regarding Victim on December 9, 2005. Ms. Goyea interviewed Victim and confirmed that she had in fact disclosed abuse to her counselor. Ms. Goyea contacted law enforcement and referred Victim to the Child Advocacy Center for a forensic interview by a law enforcement agent. During the forensic interview, Victim stated that Defendant had abused her at their residence in Irondale when Mother was on a trip to Florida.

Law enforcement officers then interviewed Defendant at his residence. Officer Beverly Gillam (Officer Gillam), a special investigator for child abuse and neglect, testified that she advised Defendant of his Miranda[2] rights, and Defendant agreed to speak with her. When Officer Gillam told Defendant of the allegations, he indicated disbelief and told her that he was never once alone with Victim during the three-year period they lived together. He further told the officer that Victim had stayed with her grandmother during the time Mother was in Florida. Defendant also contacted Ms. Goyea by telephone on February 27, 2006, and denied Victim's allegations. Defendant told Ms. Goyea that the allegations could not be true because Victim stayed with her grandmother during the time Mother was in Florida.

The officers contacted Victim's grandmother, who said that Victim did not stay with her. During trial, Victim's grandmother, Barbara Hernandez, who lived in St. Louis County, testified that Victim did not stay with her during the time Mother was in Florida. Victim's school social worker also testified that Victim did not miss any days of school during the time period at issue.

In addition to the incident that was the basis of the charged offense, Victim testified that Defendant touched her in a way she did not like when he used to make her dance with him, wrapping her legs around his hips while he held her buttocks and pulled her really close to him. Mother testified that this dancing appeared sexual and she told Defendant it was inappropriate. Defendant, however, would not always put Victim down. Additionally, Victim testified that Defendant would slap her buttocks sometimes, and Defendant had a rule that she had to kiss him on the lips "or he'd get mad." Victim further testified about a time when her family had to shower in the barn and Defendant would make

her go out by herself while he watched her take a shower.

The jury found Defendant guilty of first-degree child molestation and first-degree statutory sodomy at the end of the one-day trial.

*Penalty Phase of Trial*

Defendant's trial was bifurcated into a guilt phase and a penalty phase. The penalty phase of the trial took place immediately following the guilt phase of the trial. The State submitted an official printout of Defendant's criminal history, a certified copy of Defendant's plea and sentence in Washington County, and a certified copy of the serial records from the Missouri Department of Corrections.

During the sentencing phase of the trial, Mother testified that during the beginning of her relationship with Defendant, Defendant drank too much, but otherwise treated her and her children well. Once they moved to Irondale, however, the relationship went downhill. Defendant physically abused Mother's son, making him stand on a spot on the wall on his tiptoes with wind chimes on his back, so if the boy moved, Defendant would hit him. Additionally, because the boy had bowel problems and had trouble keeping himself clean, Defendant made the boy stand on a spot with a bag of dog feces underneath his nose "so that he could understand how other people felt being around him."

Defendant also beat his own son. When Mother tried to stop Defendant, Defendant would hit her and then return to hitting the child. Mother testified that once, when she tried to stop Defendant from hitting his son, Defendant "turned around and laid me out on the floor with a punch and he told me never to stand in the way between him and his child again and he went back to beating [his son] and [his son] was huddled in the fetal position in the tub."

Mother also testified that one time when Defendant was angry with her, he called her to the garage, grabbed her head and pulled her hair, hit her and then shoved her face into the gravel and chicken feces. Defendant tried to force Mother into a corner where a .22 caliber rifle was kept, but some visitors arrived at the house and ended the struggle. Mother told the children to go to the neighbor's house, but Defendant told her to bring them back or he would kill her in front of them. Mother testified that Defendant also disabled the wires in the car so that Mother could not drive anywhere.

Additionally, Mother testified about a time when Defendant kicked her in the stomach and she fell to the ground. When she fought back, Defendant grabbed her by the throat and choked her while covering her nose and mouth so she could not breathe. Mother showed the jury a scar on her face from where Defendant extinguished a cigarette, and caps on her front teeth from where Defendant punched her in the mouth.

Mother also testified that Defendant made her children watch him shoot their beagles, and then made the children carry the dead dogs across the creek and leave them on a neighbor's property. Defendant forced Mother to write bad checks for cigarettes, beer, and drugs. Defendant had Mother buy pseudoephedrine, one of the necessary ingredients to manufacture methamphetamine, which he made in their barn. The chief deputy for the Washington County Sheriff's Office testified that he was with Officer Gillam when she interviewed Defendant at his home, and Defendant had surrendered to the officers his methamphetamines.

Mother further testified that she sent her oldest daughter to live with her daughter's father in Montana after an incident

when Defendant insisted that the oldest daughter stay in the car with him so he could bond with her, and then he put his hands between her legs, touched her vaginal area, and tried to kiss her.

Additionally, Mother testified that after she was already living with Defendant, Defendant told her that he was charged in Ste. Genevieve County for raping a girl named Heidi. Officer Gillam also testified that when she had interviewed Defendant, Defendant told her that his friend's son's girlfriend filed rape charges against him in another county, but the case was dropped.

During the sentencing phase of the trial, Defendant presented one witness, Vanessa Schanz (Ms. Schanz), who was his son's former girlfriend. Ms. Schanz testified that Defendant had helped stop her seizure once and saved her life. She also revealed that she was facing charges of five counts of possession of chemicals with the intent to manufacture methamphetamine, and that Defendant's son was in jail on first-degree murder charges.

The jury recommended 15 years of imprisonment for the first-degree child molestation charge and 50 years of imprisonment for the first-degree statutory sodomy charge. During Defendant's formal sentencing hearing on January 7, 2008, the trial court imposed the sentences recommended by the jury to run consecutively.

This appeal follows.

### Points on Appeal

Defendant raises three points on appeal. In his first point, Defendant alleges the trial court abused its discretion in permitting Victim and Mother to testify about other conduct by Defendant that was sexual in nature, in violation of his right to due process, a fair trial, and the right to be tried only for the offense charged, as as-

sured by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 17, and 18(a) of the Missouri Constitution. Defendant argues that the testimony was inadmissible because it was evidence of uncharged misconduct presented to show that Defendant had a propensity to commit sexual acts with Victim.

In his second point, Defendant claims the trial court plainly erred in allowing the prosecutor during the sentencing phase to ask Officer Gillam and Mother about rape charges against Defendant, in violation of Section 557.036, RSMo. Cum. Supp. 2003,[3] and his right to due process and a fair trial, as assured by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution, because the testimony was inadmissible under Section 557.036. Defendant argues that the testimony about the rape did not go to Defendant's history or character because the only logical relevance of such evidence to his history or character is if Defendant was guilty of the charges, which the State did not show by a preponderance of the evidence. Defendant alleges that the jurors' knowledge that Defendant was accused in another sex case resulted in manifest injustice.

Finally, in his third point, Defendant alleges the trial court plainly erred in not *sua sponte* declaring a mistrial when Mother testified during the sentencing phase of trial that Defendant put his hands between the legs of her oldest daughter, in violation of his right to due process and a fair trial, as assured by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution, because the testimony was hearsay and

---

**3.** All subsequent statutory citations to Section     557.036 are to RSMo. Cum. Supp. 2003.

inadmissible under any exception to the hearsay rule. Defendant asserts that only a mistrial would have cured the prejudice because the alleged conduct was so similar in character to that of which he had been convicted. Defendant claims the trial court's admission of the evidence constituted manifest injustice because it was inflammatory and encouraged the jury to increase Defendant's punishment.

## Discussion

### Point I—No Error in Admitting Evidence of Defendant's Other Sexual Acts

Defendant alleges the trial court abused its discretion in permitting Victim and Mother to testify about Defendant's other conduct, which was sexual in nature, because the testimony was inadmissible as evidence of uncharged misconduct and was presented to show that Defendant had a propensity to commit sexual acts with Victim. Because the evidence was admissible to show Defendant's motive, which was his sexual desire for Victim, we find the trial court did not abuse its discretion in admitting evidence of Defendant's other sexual acts.

### Standard of Review

"A trial court has broad discretion to admit or exclude evidence at trial." *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006), *quoting State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). A trial court's ruling on the admission of evidence will be reversed only if the court clearly has abused its discretion. *Id.* The trial court abuses its discretion "when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.*, *quoting State v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005). On direct appeal, this Court will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* A trial court error is prejudicial if there is a reasonable probability that it affected the outcome of the trial. *Id.*

## Analysis

Without exception, "[e]vidence of prior criminal acts is *never* admissible for the purpose of demonstrating the defendant's propensity to commit the crime with which he is presently charged." *State v. Ellison*, 239 S.W.3d 603, 606 (Mo. banc 2007). Evidence of the defendant's prior misconduct is admissible, however, "if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, ... and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect." *Id.* at 606–07. Thus, evidence of prior criminal acts *may* be admissible for alternative purposes such as establishing motive, intent, absence of mistake or accident, a common scheme or plan, or the identity of the person charged with the commission of the crime on trial. *Id.* Additionally, evidence of part of the circumstances or the sequence of events surrounding the offense charged may be admissible "to present a complete and coherent picture of the events that transpired." *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc 1994).

In cases involving sexual abuse of children, Missouri courts have admitted evidence of prior sexual misconduct under three of the five enumerated purposes: motive, identity, and common scheme or plan. *State v. Bernard*, 849 S.W.2d 10, 13 n. 1 (Mo. banc 1993). "Numerous cases hold that prior sexual conduct by a defendant toward the victim is admissible as it tends to establish a motive, that is satisfaction of defendant's sexual desire for the victim." *State v. Magouirk*, 890 S.W.2d 17, 17 (Mo.App. S.D.1994). *See also State*

*v. Graham,* 641 S.W.2d 102, 105 (Mo. banc 1982), and *State v. Douglas,* 797 S.W.2d 532, 533 (Mo.App. W.D.1990).

In addition to the incident upon which the charged offense was based, Victim testified that Defendant made her dance with him in a way that made her feel uncomfortable. Mother confirmed Victim's testimony and additionally testified that the dancing appeared sexual and she told Defendant it was inappropriate. Additionally, Victim testified that Defendant would slap her buttocks sometimes, and Defendant had a rule that she had to kiss him on the lips "or he'd get mad." Victim further testified that Defendant would watch her take a shower in their barn.

Both Victim's and Mother's trial testimony regarding Defendant's other sexual acts, of which Defendant now complains, is strictly limited to Defendant's sexual acts directed toward Victim. This evidence was offered for the purpose of establishing Defendant's motive that he had a sexual desire for Victim and intended to act on it. The trial court's ruling was not "clearly against the logic of the circumstances" and was not "so unreasonable as to indicate a lack of careful consideration." *Forrest,* 183 S.W.3d at 223. Defendant's first point is denied.

**Points II and III—No Plain Error During Sentencing Phase**

In his second and third points, Defendant claims the trial court plainly erred during the sentencing phase of trial in two respects: in allowing the State to present evidence regarding a past rape charge against Defendant, and in not *sua sponte* declaring a mistrial when Mother testified regarding Defendant touching her oldest daughter. Defendant argues that the juror's knowledge of this evidence resulted in manifest injustice. Because we find that the admitted evidence was not "out-

come determinative," we fail to find the trial court committed plain error.

### *Standard of Review*

■ We review a trial court's decision to admit evidence for an abuse of discretion. *State v. Hutchison,* 957 S.W.2d 757, 763 (Mo. banc 1997). Defendant has not properly preserved his second and third points on appeal, however, because Defendant did not object at trial to the challenged testimony of Officer Gillam or Mother. A point not properly preserved may be reviewed for plain error, with the court's discretion, where a manifest injustice or miscarriage of justice has resulted. Rule 30.20 [4]; *State v. Tisius,* 92 S.W.3d 751, 767 (Mo. banc 2002). A request for plain error review triggers the commencement of a two-step analysis by an appellate court. *State v. Campbell,* 122 S.W.3d 736, 740 (Mo.App. S.D.2004). The first step of this analysis is to determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *Id.* If facially substantial grounds are found to exist, the appellate court should secondly engage in plain error review to determine whether manifest injustice or a miscarriage of justice has actually occurred. *Id.* If facially substantial grounds are not found to exist, however, the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20. *Id.* To find manifest injustice, this Court must find that the trial court's error in admitting the evidence was outcome determinative. *State v. Baxter,* 204 S.W.3d 650, 652 (Mo. banc 2006).

### *Analysis*

*A. Point II—Evidence of Rape Charge*

*1. Facial Error in Allowing Evidence of Dropped Rape Charge*

---

**4.** All rule citations are to the Missouri Rules of Civil Procedure (2006).

■ During the penalty phase of trial in which the defendant is assessed with punishment, evidence supporting or mitigating punishment may be presented. Section 557.036.3. "Such evidence may include, within the discretion of the court, evidence concerning the impact of the crime upon the victim, the victim's family and others, the nature and circumstances of the offense, and the history and character of the defendant." Section 557.036.3.

■ Generally, "[t]he trial court has discretion during the punishment phase of trial to admit whatever evidence it deems helpful to the jury in assessing punishment." *State v. Strong*, 142 S.W.3d 702, 720 (Mo. banc 2004), *quoting State v. Glass*, 136 S.W.3d 496, 517 (Mo. banc 2004). Although the State may present evidence of criminal conduct for which the defendant was never convicted, the penalty phase jury may only consider such evidence if proven by a preponderance of the evidence. *State v. Fassero*, 256 S.W.3d 109, 119 (Mo. banc 2008).

During the penalty phase of Defendant's trial, the State questioned Officer Gillam and Mother regarding a past rape charge against Defendant, which was subsequently dropped. Defendant argues that like *Fassero*, without evidence that the appellant was guilty of a charged rape, testimony regarding the charge was inadmissible as history or character evidence. In *Fassero*, the state presented only an Illinois indictment, which the Missouri Supreme Court found was relevant only to prove that the appellant had been charged with a crime, not that he had actually engaged in any criminal conduct. *Id.* Thus, the Court held the indictment was not "history and character" evidence authorized by Section 557.036.3, and was therefore, inadmissible. *Id.*

We agree with Defendant, and the State likewise admits, that here, evidence of a charged rape, which subsequently was dropped, runs afoul of the Supreme Court's ruling in *Fassero*. The State presented no evidence, much less proof by a preponderance of the evidence, that Defendant had committed the charged crime. As exemplified by the prosecutor's closing remark that "[t]his isn't the first rodeo for this defendant and this isn't the first sex charge for this defendant," we find the challenged evidence was used to show that Defendant engaged in the charged conduct. The evidence regarding Defendant's dropped rape charge thus was not presented as "history and character" evidence authorized by Section 557.036.3 and was, therefore, inadmissible.

*2. No Manifest Injustice or Miscarriage of Justice*

■ Error in admitting evidence is not prejudicial requiring reversal unless it is outcome-determinative. *Id.* A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced a jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence. *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000). Prejudice in this case requires that the Court determine whether there is a reasonable probability that the jury would have imposed a lesser sentence but for the erroneously admitted evidence regarding Defendant's dropped rape charge. *Fassero*, 256 S.W.3d at 119.

As the *Fassero* Court explained, in evaluating whether the admission of the dropped rape charge was "outcome determinative," "it is important to consider the highly inflammatory nature of sexual abuse charges" in the evidence presented. *Id.* In reviewing for an abuse of discretion

in a properly preserved claim of error, the *Fassero* Court found that the similar nature of the charges described in the challenged evidence and the severity of the sentence imposed created a high risk that the admission of the challenged evidence resulted in prejudice, and therefore, the Court vacated the defendant's sentence and remanded for a new penalty phase hearing and new sentence. *Id.* Here, however, despite the similarities between a rape charge and Defendant's present charge of child molestation and statutory sodomy, Officer Gillam and Mother testified simply that another county previously had charged Defendant with rape, and then dropped the charge. Neither witness testified as to any details, similar to or distinct from any of the alleged conduct in the present case. In reviewing for an "evident, obvious, and clear" error here under plain error review, we find that Defendant has not met his burden. *State v. Bourrage,* 175 S.W.3d 698, 701 (Mo.App. E.D.2005).

More importantly, however, the evidence in *Fassero* simply demonstrated the defendant's reputation for untruthfulness, in addition to the sexual abuse charges against him. *Id.* at 114. The evidence here, on the other hand, overwhelmingly demonstrated Defendant's motive of sexual desire for Victim, and Defendant's brutality and intent to harm his wife and children. As we explained earlier in greater detail, Mother testified at length regarding Defendant's vicious, sadistic, and chronic physical and mental abuse toward her son, Defendant's son, and Mother herself, including Defendant's expressed intent to kill her in front of her children. Additionally, Mother testified as to Defendant's drug and alcohol abuse, and the chief deputy for the Washington County Sheriff's Office confirmed that Defendant had surrendered his methamphetamine during the officers' visit to his

home. Given the overwhelming evidence of Defendant's depravity in dealing with Mother and the children, we find that the evidence regarding Defendant's dropped rape charge did not prejudice him. Even without hearing the challenged evidence that Defendant had previously been charged with rape, which charge was subsequently dropped, we find no reason to believe the jury would have imposed a lesser sentence for Defendant. Without a finding of manifest injustice or miscarriage of justice, Defendant's second point is denied.

### B. Point III—No Plain Error in Failing to Sua Sponte Grant a Mistrial

■ In his third point, Defendant claims that the trial court plainly erred in not *sua sponte* declaring a mistrial when Mother testified during the sentencing phase of trial that Defendant put his hands between the legs of her oldest daughter, because the testimony was hearsay, inadmissible under any exception to the hearsay rule, and only a mistrial would have cured the prejudice in that the alleged conduct was so similar in character to that of which he had been convicted. Defendant claims the trial court's admission of the evidence constituted manifest injustice because it was inflammatory and encouraged the jury to increase Defendant's punishment.

In addition to the plain error standard of review stated above, "[a] mistrial is a drastic remedy and 'a court should take such action *sua sponte* only in exceptional circumstances.'" *State v. Manzella,* 128 S.W.3d 602, 608 (Mo.App. E.D.2004), *quoting State v. Clay,* 975 S.W.2d 121, 134 (Mo. banc 1998). If the drastic remedy of a mistrial is warranted, it is the responsibility of counsel to request that relief. *State v. Hendrix,* 883 S.W.2d 935, 945 (Mo.App. W.D.1994). Because the trial court is in a

better position to judge the prejudicial effects of any error, the declaration of a mistrial rests in its discretion. *State v. Vineyard*, 839 S.W.2d 686, 692 (Mo.App. E.D.1992). "In order for the failure to declare a mistrial to be reversible error, we view the entire record and must conclude, in light of all of the evidence, that the single erroneous statement ... had a decisive influence on the jury." *Id.*

With regard to Defendant's third claim of error, Mother testified that her oldest daughter was sent to live with the child's father because Defendant put his hands between her legs, touched her vaginal area, and tried to kiss her. Like *Fassero,* these charges are very similar to the charges in the present case against Victim. As we found with regard to the evidence of Defendant's previous dropped rape charge, we also find that the evidence of the abuse of Mother's oldest daughter was not "history and character" evidence authorized by Section 557.036.3. *Fassero,* 256 S.W.3d at 119. Therefore, the evidence was inadmissible.

The Western District Court of Appeals has held that in a jury trial, whether involving a determination of guilt or the penalty phase under Section 557.036, "hearsay that does not qualify under an exception to the rule should be excluded, as it would be in any other jury proceeding." *State v. Berry,* 168 S.W.3d 527, 540 (Mo.App. W.D.2005). Defendant argues that here, as in *Berry,* the testimony regarding Mother's oldest daughter was offered for the truth of the matter and does not fall under any exception to the hearsay rule. The State, on the other hand, argues that the testimony was admissible to explain the subsequent conduct of Mother, who then sent her oldest daughter to live with her daughter's father. However, already finding error in admitting the challenged evidence, we are not required to determine whether the out-of-court statement of the oldest daughter, repeated in court by Mother, is hearsay. Instead, we turn our attention to whether Defendant was prejudiced by the admission of such evidence.

Defendant claims that the testimony regarding the alleged abuse of Mother's oldest daughter was especially inflammatory because the allegations involve the same conduct underlying Defendant's conviction in the case before the jury. Despite the similarity in the allegations, we find that the overwhelming evidence of Defendant's ongoing brutality substantially contributed to the jury recommendation and basis for Defendant's sentence. As we explained in Point II, and in greater detail within the background section of this case, substantial evidence was introduced regarding Defendant's physical and mental abuse toward her son, Defendant's son, and Mother herself, including Defendant's threat to kill Mother in front of her children. Defendant's drug and alcohol abuse was revealed at trial through the testimony of Mother and the chief deputy for the Washington County Sheriff's Office. Based on this overwhelming evidence against Defendant, and even without the evidence regarding Mother's oldest daughter, we find the jury would not have recommended, and the trial court would not have imposed, a lesser sentence than that given. We find no manifest injustice or miscarriage of justice and thus, Defendant's third point is denied.

*Conclusion*

The judgment of the trial court is affirmed.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., Concur.