STATE of Missouri, Respondent,

v.

Larry Eldo UPTEGROVE, Appellant.

No. WD 72356.

Missouri Court of Appeals,
Western District.

Jan. 18, 2011.

Rehearing Denied March 1, 2011.

John P. O'Connor, Kansas City, MO, for Appellant.

Chris Koster, Attorney General, Terrence M. Messonnier, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division II: JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

After a trial by jury in the Circuit Court of Henry County ("trial court"), Larry E. Uptegrove ("Uptegrove") appeals his convictions on two counts of child molestation in the first degree, in violation of section 566.067,[1] for which he received two concurrent seven-year sentences. Uptegrove raises two points on appeal, in which he argues that: (1) the trial court erroneously overruled Uptegrove's motion for judgment of acquittal at the close of all evidence due to the insufficiency of the evidence; and (2) the trial court plainly erred by failing to *sua sponte* declare a mistrial after the State introduced evidence (that Uptegrove's counsel did not object to) of prior uncharged crimes. We disagree with Uptegrove's claims of error and affirm.

## Factual and Procedural Background

Viewing the record in the light most favorable to the jury's verdict,[2] the following evidence was established at trial:

Beginning in 2004, Uptegrove began inappropriately touching his ten-year-old granddaughter, M.B.U. At trial, M.B.U. testified that Uptegrove inappropriately touched her multiple times per week, starting when she was ten years old and ending just before her fifteenth birthday. The first incident occurred in Johnson County when Uptegrove was giving M.B.U. a ride home from her basketball game. M.B.U. testified that while they were driving, Uptegrove began to touch her in the vaginal area. He then pulled onto a gravel road and stopped the car. Uptegrove then told M.B.U. to pull down her shorts, and he put his hand under her underwear and started moving his finger around. When he finished, Uptegrove asked M.B.U. if it "felt good."

After this initial incident, Uptegrove continued to inappropriately touch M.B.U. for several more years, at least once a week. The inappropriate touching most commonly occurred during golf cart rides on paths in the woods and during trips Uptegrove and M.B.U. would take to Calhoun to pick up fuel for the family's farm

---

1. All statutory references are to the Revised Statutes of Missouri (2000) unless otherwise noted.

2. *See State v. Moyers*, 266 S.W.3d 272, 275 (Mo.App. W.D.2008) ("This court considers the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, disregarding all contrary evidence and inferences.").

equipment. Uptegrove would touch M.B.U. on her upper thigh and occasionally on her vaginal area and breasts. During this period of inappropriate touching, Uptegrove told M.B.U. that she was a "sex pot" and that she was "hot." Uptegrove also told M.B.U. that he was "obsessed" with her and that she "turns him on." Uptegrove also bought special gifts for M.B.U., beyond what he typically gave his other grandchildren. These special gifts included a pair of cowboy boots and a digital camera. On the drive back home after purchasing the digital camera, Uptegrove pulled the car over and made M.B.U. unbutton her pants and show him her underwear in exchange for getting the digital camera.

During the course of these incidents, Uptegrove regularly told M.B.U. not to tell anyone about how he would touch her. M.B.U., however, told several friends, some of her cousins, and finally, in March 2009, told a teacher. After the Children's Division learned about the incidents between Uptegrove and M.B.U., M.B.U. was interviewed by Child Safe in Sedalia. After observing the interview, Detective Jeremy Bowman ("Bowman") arrested Uptegrove for child molestation.

At the outset of the interview, prior to Bowman mentioning her name, Uptegrove stated that he believed the arrest had something to do with M.B.U. During the interview, Uptegrove acknowledged touching M.B.U. on her breasts. He also acknowledged that he could not keep his hands off of her. While Uptegrove could not recall whether he had ever told M.B.U. that he thought she was a "sex pot," Uptegrove used this phrase during the interview to refer to M.B.U. When questioned about the first incident of inappropriate touching, Uptegrove admitted that he stopped and parked with M.B.U. on the gravel road, just as M.B.U. described, but claimed he and M.B.U. just talked. When asked about the incident surrounding the purchase of the digital camera, Uptegrove claimed that he had only touched M.B.U. on the clothes above the belly but soon admitted that M.B.U. unbuttoned her pants because he asked her to. During the interview, Uptegrove denied that any of the contact with M.B.U. was sexual in nature.

Later, during a conversation with Marilyn Uptegrove, Uptegrove's wife, he also denied putting a finger inside M.B.U. but did not deny any of the other allegations made against him. Uptegrove further admitted to his wife that he made M.B.U. show him her underwear in exchange for the digital camera.

On April 21, 2009, a complaint was filed against Uptegrove which alleged that, over a fifty-month period, Uptegrove committed twenty counts of child molestation in the first degree by having sexual contact with M.B.U. On August 4, 2009, an information was filed formally charging Uptegrove with those twenty counts. An amended information was later filed, reducing the charges down to five counts of child molestation in the first degree.

At trial, M.B.U. testified in great detail as to several specific interactions between her and Uptegrove and to the general demeanor of Uptegrove toward her over the past several years. The State also admitted into evidence Bowman's pre-trial interview statement, along with the exhibit itself, regarding the Uptegrove interview conducted by Bowman after Uptegrove's arrest. At the close of the State's case and at the close of all the evidence, Uptegrove's motions for judgment of acquittal were overruled.

The jury returned verdicts finding Uptegrove guilty of two counts of child molestation in the first degree and not guilty of the remaining three counts. Uptegrove's

motion for judgment of acquittal notwithstanding the verdict and motion for new trial were overruled. Uptegrove was sentenced to seven years on each count, to run concurrently. This timely appeal followed.

### Point I

In his first point on appeal, Uptegrove argues that the trial court erroneously overruled his motion for judgment of acquittal due to the insufficiency of the evidence.

### Standard of Review

When reviewing a judgment of acquittal notwithstanding the verdict, we must view the evidence in the light most favorable to the verdict and disregard all contrary evidence and inferences. *State v. Overkamp*, 646 S.W.2d 733, 736 (Mo. banc 1983); *State v. Richardson*, 22 S.W.3d 753, 755 (Mo. App. E.D.2000). Similarly, when reviewing the sufficiency of evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict, making all reasonable inferences therefrom, and disregard all evidence and inferences contrary to that finding. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). We must determine "whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Wright*, 998 S.W.2d 78, 81 (Mo.App. W.D.1999).

### Sufficiency of the Evidence and Destructive Contradictions Doctrine

■ Uptegrove contends that the trial testimony of M.B.U. was the only evidence

presented to establish the essential elements of the crime charged against him [3] and that M.B.U.'s uncorroborated trial testimony was so inherently contradictory that it could not be believed by a rational person and, therefore, was devoid of all probative value and should have been excluded. Consequently, Uptegrove claims there was insufficient evidence to support a guilty verdict.

■ " '[T]estimony of a single witness, if deemed credible by the jury, may be considered sufficient for conviction, though that testimony is uncertain or inconsistent.' " *State v. Case*, 140 S.W.3d 80, 91 (Mo.App. W.D.2004) (quoting *State v. Platt*, 496 S.W.2d 878, 881 (Mo.App.1973)). Furthermore, corroboration of a victim's testimony in criminal sexual offense trials is generally not necessary to make a submissible case. *Wright*, 998 S.W.2d at 81 (citing *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990)). There are, however, circumstances when a victim's testimony must be corroborated in order for it to be probative. *Case*, 140 S.W.3d at 91. Under the destructive contradictions doctrine, when a victim's *trial* testimony is strikingly inconsistent and contradictory, it is not probative evidence. *Case*, 140 S.W.3d at 92 (citing *State v. Goudeau*, 85 S.W.3d 126, 131–32 (Mo.App. S.D.2002) ("The rule provides that a *witness's testimony* loses probative value when his or her statements *at trial* are so inconsistent, contradictory, and diametrically opposed to one another that they rob the testimony of all probative force.")). The victim's *trial* testimony must be corroborated if it is "so 'inherently incredible, self-destructive or opposed to known physical facts' on a vital point or element that reliance on the testimony is

---

3. We disagree. Uptegrove's wife's testimony and Uptegrove's arrest statement to Detective Bowman are certainly consistent with the criminal charges. However, even if we assume that M.B.U.'s testimony was the only evidence establishing the elements of the crime, her testimony is sufficient to do so for the reasons described *infra*.

necessarily precluded." *Juvenile Officer v. T.L.C. (In the Interest of T.L.C.)*, 950 S.W.2d 293, 295 (Mo.App. W.D.1997) (quoting *State v. Beckett*, 858 S.W.2d 856, 857 (Mo.App. W.D.1993)); *see also Case*, 140 S.W.3d at 91.

Uptegrove insists that the destructive contradictions doctrine is applicable in this case. Uptegrove provides three instances where he claims M.B.U.'s testimony was "riddled with contradictions about key elements of the offense." In his first example, Uptegrove alleges that when M.B.U. testified at trial that Uptegrove told her "multiple times" she "turned him on," she "wildly" contradicted her earlier sworn testimony given at a *preliminary hearing* when she testified that she was *unsure* as to whether Uptegrove told her that she "turned him on" *more than once*. Uptegrove also argues that M.B.U. testified at trial that she had never been touched *under her clothing* in Henry County, but during the *preliminary hearing*, she testified that she had been touched *under her clothing* in Henry County on one occasion. Finally, Uptegrove argues that M.B.U.'s trial testimony conflicts with her *deposition*. In her *deposition*, M.B.U. testified that Uptegrove's hand would be on her thigh and she did not know if it was touching her vaginal area, while at trial, she testified that he would rub her vaginal area with his finger when his hand was on her thigh.

Uptegrove's criticisms of M.B.U.'s trial testimony do not call into play the destructive contradictions doctrine. The destructive contradictions doctrine " *is applicable only to the respective elements of a witness's testimony at trial, not to contradictions between trial testimony and prior statements.*' " *State v. Burns*, 671 S.W.2d 306, 311 (Mo.App. W.D. 1984) (quoting *Amish v. Walnut Creek Dev., Inc.*, 631 S.W.2d 866, 870 (Mo.App. W.D.1982)). *See also State v. Helmig*, 924 S.W.2d 562, 565 (Mo.App. E.D.1996) (destructive contradictions doctrine held inapplicable to sworn and unsworn *pre-trial* statements by victim in victim's deposition testimony, preliminary hearing testimony, and statement to police detective, which were inconsistent with victim's *trial* testimony); *State v. Rodney*, 760 S.W.2d 500, 503 (Mo.App. W.D.1988) (destructive contradictions doctrine held inapplicable to witness's *pre-trial* deposition testimony inconsistent with witness's *trial* testimony). Similarly, the destructive contradictions doctrine does not apply to "contradictions as to collateral matters, or to inconsistencies not sufficient to make the testimony inherently self-destructive." *Wright*, 998 S.W.2d at 81. *See also State v. Marlow*, 888 S.W.2d 417, 421–22 (Mo.App. W.D. 1994) ("The exception is triggered only by inconsistencies or contradiction within the victim's *trial* testimony." Furthermore "[t]he discrepancies must amount to 'gross inconsistencies and contradictions,' and must go directly to an essential element of the case." (emphasis added)).

Uptegrove, in effect, asks us to completely disregard M.B.U.'s *trial* testimony because of a few slight inconsistencies on collateral matters between her *trial* testimony and her earlier *pre-trial* statements when, above all else, the contradictions complained of do not make M.B.U.'s testimony *at trial* inherently self-destructive. We decline to do so, as the testimonial discrepancies complained of were not "gross inconsistencies," did not materially impact the evidence as to "essential elements" of the case, did not render M.B.U.'s *trial* testimony "inherently self-destructive," and the issue of M.B.U.'s credibility and the effect of any *trial* testimony inconsistent or contradictory to *pre-trial* testimony was for the jury to determine.

■ Likewise, the doctrine does not apply where the victim's statements are inconsistent with those of other witnesses. *Wright*, 998 S.W.2d at 81. This merely creates a question of credibility for the jury to resolve. *Id.* Thus, Uptegrove's argument that because no witness, besides M.B.U., *witnessed* any inappropriate touching or sexual contact, her testimony should have been excluded, is without merit. *Id.* This, along with the inconsistencies and contradictions between trial and preliminary or deposition testimony, merely creates a question of credibility for the jury to resolve. *Id.* (citing *Marlow*, 888 S.W.2d at 422; *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992)). This is a question regarding the weight to be given the evidence, not a question regarding its admissibility. *Id.* at 82 (citing *State v. Gatewood*, 965 S.W.2d 852, 858 (Mo.App. W.D. 1998)). *See also Burns*, 671 S.W.2d at 312 ("The principal vice of defendant's theory is that it summarily assumes that all contradictory testimony offered by an opposing party is per se credible and ipso facto robs the testimony offered by the other party of all probative force. No surer way of usurping the sacred prerogative of juries can be imagined.").

M.B.U.'s trial testimony did not require application of the corroboration rule and was, therefore, properly admitted. As such, M.B.U.'s trial testimony constitutes sufficient evidence from which a reasonable juror might have found Uptegrove guilty beyond a reasonable doubt.

Point I is denied.

## Point II

In his second point on appeal, Uptegrove argues that the trial court erred by not declaring a mistrial, *sua sponte*, after the State introduced evidence, without objection, of prior uncharged crimes that Uptegrove committed against M.B.U. in Johnson County.

## Standard of Review

■ When no objection is made by trial counsel regarding the admission of evidence, we are limited to plain error review. Under Rule 30.20,[4] "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *See also State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995); *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989). To gain relief under plain error review, a criminal defendant bears the burden of showing not only that the trial court erred but that the error so substantially impacted upon his fundamental rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *Hornbuckle*, 769 S.W.2d at 93; *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App. W.D.2004).

■ Furthermore, the trial court is obligated to "ensure that a criminal defendant has a fair trial, including the obligation to exercise its discretion to control obvious misconduct by the prosecution." *Roper*, 136 S.W.3d at 902. However, "Missouri courts have been reluctant to criticize a trial court when it has declined to take action on its own motion on behalf of a party." *Id.* Because a mistrial is a drastic remedy, a court should only take such action *sua sponte* in exceptional circumstances. *State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998); *State v. Camper*, 391 S.W.2d 926, 927–28 (Mo.1965). For the

4. All rule references are to the Missouri Rules of Criminal Procedure, 2010, unless otherwise indicated.

failure to declare a mistrial to constitute reversible error, the court must find that the alleged error had a decisive influence on the jury. *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000) ("[T]he test is whether the prejudicial improper admission was outcome-determinative.").

▮ As Uptegrove's trial counsel did not object to the State's introduction of evidence of prior uncharged crimes Uptegrove committed, we are limited to plain error review. Therefore, to determine if relief is warranted, we must first determine whether there is plain error, error that is "evident, obvious, and clear," and if so, whether a manifest injustice or miscarriage of justice has occurred as a result of the error. *Roper*, 136 S.W.3d at 900.

### Plain Error Analysis

▮ "Without exception, '[e]vidence of prior criminal acts is *never* admissible for the purpose of demonstrating the defendant's propensity to commit the crime with which he is presently charged.'" *State v. Thurman*, 272 S.W.3d 489, 495 (Mo.App. E.D.2008) (quoting *State v. Ellison*, 239 S.W.3d 603, 606 (Mo. banc 2007)). However, evidence of the defendant's prior misconduct is admissible when it is logically relevant—it has some legitimate tendency to directly establish the accused's guilt of the charges for which he is on trial, and when it is legally relevant—its probative value outweighs its prejudicial effect. *Id.* Missouri courts have admitted evidence of prior sexual misconduct for purposes other than propensity, such as establishing motive or intent. *Id. See also State v. Slaughter*, 316 S.W.3d 400, 403 (Mo.App. W.D.2010). Numerous courts have held that prior sexual contact toward the victim is admissible as it tends to demonstrate the sexual desire for that victim, thereby establishing motive. *Thurman*, 272 S.W.3d at 495. "Additionally, evidence of

part of the circumstances or the sequence of events surrounding the offense charged may be admissible 'to present a complete and coherent picture of the events that transpired.'" *Id.* (quoting *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc 1994)); *Slaughter*, 316 S.W.3d at 403–04. Furthermore, a defendant's mental state can be determined from evidence of his conduct before the act itself and from his subsequent conduct. *See State v. Callen*, 97 S.W.3d 105, 110 (Mo.App. W.D.2002).

In addition to the incidents upon which the charged offenses were based, M.B.U. testified that Uptegrove first touched her in a sexual manner on the way home from a basketball game in Johnson County and again on a trip home from Warrensburg where Uptegrove had bought M.B.U. a digital camera. During these trips, Uptegrove asked M.B.U. whether his touching her vagina felt good and for M.B.U. to show him her underwear. Because Uptegrove raised the issue of intent by denying that the relationship was sexual in nature, the State properly introduced evidence of these two incidents. The evidence was offered for the purpose of establishing Uptegrove's intent to "arouse or satisfy" his sexual desires, a required element of the crimes charged. § 566.067. A juror could reasonably believe that these incidents established that Uptegrove intended to touch M.B.U. in a sexual manner for the charged incidents for which he was convicted.

The evidence of Uptegrove's prior sexual misconduct toward M.B.U. was properly admitted at trial. Because Uptegrove failed to show that the evidence's admittance constituted "evident, obvious, and clear" error, we need not examine whether a manifest injustice or miscarriage of justice has resulted.

Point II is denied.

### Conclusion

M.B.U.'s trial testimony was properly admitted and constituted sufficient evidence from which a reasonable juror might have found Uptegrove guilty beyond a reasonable doubt. Additionally, Uptegrove failed to show plain error in the trial court's failure to *sua sponte* declare a mistrial because M.B.U.'s testimony as to Uptegrove's other sexual misconduct toward her was properly admitted to show Uptegrove's motive or mental state. The judgment of the trial court is affirmed.

JAMES EDWARD WELSH, Presiding Judge, and KAREN KING MITCHELL, Judge, concur.