STATE of Missouri, Respondent,

v.

Joseph B. SPROFERA, Appellant.

No. WD 73213.

Missouri Court of Appeals,
Western District.

April 10, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2012.

Application for Transfer
Denied Aug. 14, 2012.

S. Kate Weber, for Appellant.

Dora Fichter, for Respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge Presiding, JOSEPH M. ELLIS, Judge and JUSTINE DEL MURO, Sp. Judge.

JOSEPH M. ELLIS, Judge.

Joseph Sprofera appeals from his conviction of one count of statutory rape in the second degree, § 566.034. For the following reasons, the judgment is affirmed.

Appellant and his wife, Cynthia Sprofera, adopted the victim, B.S., on January 21, 1998, when the B.S. was four years old. The couple also adopted B.S.'s older brother, T.S., who had special needs and an I.Q. of 72.[1]

In February 2008, during a medical exam when B.S. was fourteen years old, it was discovered that she was pregnant. At that time, B.S. maintained that T.S. was the father. The pregnancy was aborted shortly after it was discovered.

---

1. The couple had two other adopted children.

In 2009, Appellant and Mrs. Sprofera separated, and Mrs. Sprofera filed for a divorce. In August 2009, B.S. told Mrs. Sprofera that she had been sexually abused by Appellant and that Appellant had been the one that had impregnated her. Mrs. Sprofera contacted the Child Protection Center and reported what B.S. had told her.

Following an investigation by the Lafayette County Sheriff's Department, on January 19, 2010, Appellant was charged by indictment with one count of statutory rape in the second degree. Appellant was tried by jury and found guilty as charged. On November 12, 2010, the trial court sentenced Appellant, in accordance with the jury's recommendation, to a term of seven years imprisonment. Appellant brings four points on appeal from his conviction and sentence.

█ In his first point on appeal, Appellant claims that the trial court abused its discretion in allowing B.S. to testify that Appellant began touching her breasts and her vagina over her clothes starting when she was in pre-school and that his sexual fondling of her continued to progress over the years until they ultimately had sexual intercourse when she was in seventh grade. Appellant contends that this testimony constituted improper evidence of other, uncharged crimes and should have been excluded from evidence.

"A trial court has broad discretion to admit or exclude evidence at trial, and its ruling will only be disturbed if the court clearly abused its discretion." *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006) (internal quotation omitted). "That discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* "Additionally, on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* at 223–24 (internal quotation omitted).

█ "A defendant has the right to be tried only on the offense for which he is charged." *State v. Davis*, 226 S.W.3d 167, 170 (Mo.App. W.D.2007). Accordingly, "[a]s a general rule, evidence of uncharged misconduct is inadmissible for the purpose of showing the propensity to commit such crimes." *Id.* "However, evidence of the defendant's prior misconduct is admissible when it is logically relevant—it has some legitimate tendency to directly establish the accused's guilt of the charges for which he is on trial, and when it is legally relevant—its probative value outweighs its prejudicial effect." *State v. Uptegrove*, 330 S.W.3d 586, 593 (Mo.App. W.D.2011). "Missouri courts have admitted evidence of prior sexual misconduct for purposes other than propensity, such as establishing motive or intent." *Id.* "In addition, evidence of uncharged crimes that are part of the circumstances or sequence of events surrounding the offense charged may be admissible to present a complete and coherent picture of the events that transpired." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011) (internal quotation omitted).

In the case at bar, Appellant's progressive pattern of sexually groping B.S. from the time she was in preschool until she was thirteen was certainly relevant to determining whether he eventually had intercourse with her. "Numerous courts have held that prior sexual conduct toward the victim is admissible as it tends to demonstrate the sexual desire for the victim, thereby establishing motive." *Uptegrove*, 330 S.W.3d at 593; *see also Primm*, 347 S.W.3d at 70; *State v. Thompson*, 341 S.W.3d 723, 731–32 (Mo.App. E.D.2011). Moreover, this testimony served to present

a complete picture of the events that transpired.

The trial court did not abuse its discretion in determining that the probative value of this evidence outweighed its prejudicial effect. Point denied.

■ In his second point, Appellant claims that the trial court abused its discretion in refusing to strike B.S.'s unsolicited testimony that, on one occasion, she had seen Appellant push Mrs. Sprofera against a wall and break a mirror. Appellant claims that this testimony should also have been excluded as evidence of prior, uncharged misconduct.

At trial, B.S. offered the following testimony:

Q: Did you ever see [Appellant] angry?

A: Yes.

Q: And what would usually happen when you saw him angry?

A: He would get really aggressive. There is one time that he got aggressive and pushed Mom against the wall and broke a mirror.

Appellant objected to this testimony based on relevancy and asked the trial court to strike it. The State responded by claiming that the testimony was relevant to explain B.S.'s delay in reporting Appellant's sexual abuse of her. The trial court then denied Appellant's relevancy objection.

■ Prior bad acts may be "admissible to explain that a witness's fear of the defendant led to a delay in reporting a matter to the police." *State v. Hitchcock*, 329 S.W.3d 741, 750 (Mo.App. S.D.2011). Certainly, a defendant's abuse of others in the presence of a child victim, especially abuse of a sibling, mother, or other relative, may be probative in explaining the victim's fear of the defendant and delay in reporting the sexual abuse. *Id.* The trial court did not abuse its discretion in finding

the probative value of B.S.'s testimony outweighed its prejudicial effect.

Moreover, additional, more egregious evidence that Appellant physically abused Mrs. Sprofera and B.S.'s brother, J.S., was admitted into evidence and is not challenged on appeal. Accordingly, even had the trial court erred in admitting the testimony related to the broken mirror, we would be unable to find sufficient prejudice to warrant reversal of Appellant's conviction. Point denied.

■ In his third point, Appellant contends that the trial court abused its discretion in allowing Detective Swearingin, one of the arresting officers, to testify, over Appellant's objection, that Appellant was agitated and used profanity as they transported him to jail. Specifically, at trial, after describing how Appellant was placed under arrest, Detective Swearingin offered the following testimony:

Q: Did [Appellant] make any direct comments to you as you were in the squad car within [sic] transporting him?

A: Yes, he did.

Defense counsel: Objection relevancy.

The court: Overruled.

Q: Go ahead.

A: He said, "Fuck you, fuck you, fuck you." Another statement he made was, "I'm tired of you Lafayette County motherfuckers."

Q: Did you have any other conversation with him?

A: Yes. I told him to calm down or I was going to have to jerk him out of the car and mace him. And he said, "I know you would, you little bitch."

Q: What was his facial expression as he was making these remarks to you?

A: I couldn't see that, he was in the front seat and I was behind him.

Q: And was it fair to say he was agitated?

A: Yes.

Q: Did he calm down after your threat to mace him?

A: Yes. We didn't have any further problems.

Appellant argues that this testimony was evidence of uncharged bad acts and was irrelevant to the charges against him.[2]

█ Generally, under Missouri law, where relevant, "evidence of the circumstances surrounding a defendant's arrest . . . is admissible and may be considered by the jury on the issue of the defendant's guilt." *State v. Ondo*, 232 S.W.3d 622, 626 (Mo.App. S.D.2007). The detective's testimony afforded a narrative of the events surrounding Appellant's arrest and reflected statements voluntarily made by Appellant while in custody immediately following his arrest. The trial court did not abuse its discretion in admitting Detective Swearingin's testimony into evidence. Point denied.

█ In his final point on appeal, Appellant claims that the trial court abused its discretion in allowing the State ask him on cross-examination whether he recalled previously "standing in a courtroom and calling a prosecutor a cunt." Appellant claims that this testimony was irrelevant and violated his right to be tried for the crime with which he was charged.

The State argued at trial and now on appeal that this testimony was relevant to impeach Appellant's prior testimony in cross-examination that he was "pretty much" a calm parent and the general inference from the totality of his testimony that he denied having a significant temper. While noting the inflammatory nature of the language contained in the question, the trial court allowed the question and Appellant's affirmative response into evidence for that limited purpose.

We fail to perceive any logical relevance a profane outburst made to a prosecutor could have in proving the elements of the case against Appellant or in impeaching his testimony about his parenting. Given that the testimony was wholly irrelevant to any issue in the case and could have had some prejudicial effect, the prosecutor should not have asked such an inappropriate question, and Appellant's objection to the question should have been sustained.

█ On the record before us, however, we are simply not left with the impression that the admission of this testimony into evidence was so prejudicial that it deprived Appellant of a fair trial. It is difficult to see on the record before us how this testimony could have carried any weight in the jury's assessment of whether Appellant had sexual intercourse with B.S. Moreover, the nature of the testimony was exceedingly similar to the properly admitted testimony related to Appellant's profane outbursts towards the arresting officers. The erroneous admission of the State's question and Appellant's affirmative response was not sufficiently prejudicial to warrant reversal of Appellant's conviction.

The judgment is affirmed.

---

**2.** Appellant failed to object to the testimony related to Appellant being agitated; moreover, Detective Clarence Burns had previously testified, without objection, that Appellant got belligerent once in the police car. Accordingly, Appellant's claim related to testimony about his general agitated state is not preserved for appeal, and our review related thereto would be limited to plain error. *State v. Perdue*, 317 S.W.3d 645, 652 (Mo.App. S.D. 2010). We find no plain error in the admission of any of the testimony challenged in this point.

HARDWICK, C.J., concurs.

DEL MURO, Sp. J., dissents in separate opinion filed.

JUSTINE E. DEL MURO, Special Judge.

I humbly dissent.

Appellant, like any criminal defendant, has the right to a fair trial on the charge in the information and free from character assassination, uncharged bad conduct, and irrelevant "evidence" designed solely to inflame the passions and prejudice of the jury. Regrettably, that did not happen here. The State was permitted, often over objection, to introduce numerous uncharged bad acts, including prior sexual misconduct, assaultive bad behavior toward the victim's brother and mother, aggressive, offensive comments to police officers after his arrest, and a grossly obscene and inflammatory outburst toward a prosecutor during a prior court hearing. As a result the jury was misled, even encouraged, to convict appellant for who he was, not merely the crime for which he stood charged. Appellant's rights to due process under both the Missouri and federal constitution were violated here. Appellant is entitled to a new and fair trial.

The allegations against appellant arose in the context of a contested divorce. Prior to her mother filing for divorce in the spring of 2009, B.S. had never accused her adoptive father of any inappropriate conduct, sexual or otherwise. As the majority notes, B.S. had claimed that her older brother, a borderline mentally retarded young man, had gotten her pregnant. There is no indication in the record that B.S. had reported her brother's sexual advances until the pregnancy was discovered.

Contrary to the majority's opinion, B.S.'s claim of appellant touching her sexually when she was as young as three or four provides neither motive nor intent for sexual intercourse ten years later, and its prejudicial effect is not outweighed by the minimal probative value, if any, this testimony provides. As offensive as statutory rape is to our culture, it pales in comparison to the sexual abuse of a three, four, or five year old child. Even in prison, such behavior is viewed with such disdain that those who have engaged in it are isolated for their own safety. The prejudice of this evidence is manifest.

While there may be an arguable basis for the admissibility of the prior sexual abuse, such is not true of the prosecution's effort to paint appellant as abusive, aggressive and violent to third parties, a theme of the prosecution's case. For example, contrary to the majority's claim that it was "unsolicited," the prosecutor in fact sought out the testimony that appellant was capable of violence:

[Prosecutor] Q: What was your relationship like with your dad, aside from the inappropriate touching; did you have a close relationship with him?

[B.S.] A: Yes, I was actually daddy's little girl.

[Prosecutor] Q: Did you ever see [appellant] angry?

[B.S.] A: Yes

[Prosecutor] Q: And what would usually happen when you saw him angry?

[B.S.] A: He would get really aggressive. There is one time that he got aggressive and pushed mom against the wall and broke a mirror.

Although it is true that prior bad acts may be admissible to explain the victim's fear of the accused and her delay in reporting the crime to police, that was not the tenor of this testimony[3]. Later, when asked about

**3.** The majority cites *State v. Hitchcock,* 329 S.W.3d 741 (Mo. App. S.D.2011) for its posi-

the years of delay before reporting the sexual abuse by appellant B.S. testified that her fear of appellant was the result of threats he purportedly made after having sex with her [4]:

[Prosecutor] Q: Did he ever threaten to hurt you?

[B.S.] A: Yes.

[Prosecutor] Q: When?

[B.S.] A: During the time after we were done he would always threaten me.

[Prosecutor] Q: During the time when you done, when he was done with you?

[B.S.] A: When we were done with the, the sex, and the inner molesting.

[Prosecutor] Q: How would he threaten you?

[B.S.] A: He would say that he would blow my brains out or slit my throat.

[Prosecutor] Q: Did he say how he was going to blow your brains out?

[B.S.] A: With a gun.

[Prosecutor] Q: Did you ever see a knife or anything with which he might have slit your throat, or did he just threaten you verbally?

[B.S.] A: Well, I knew he had a hunting knife, but he would always say verbally.

With this testimony it is apparent that the earlier evidence regarding appellant's violence against B.S.'s mother and brother was bad character testimony, not fear of reprisal evidence. This bad character attack persisted throughout the trial; even

through appellant never put his character in issue. The prosecutor elicited from the detective who arrested appellant that appellant had repeatedly cursed him, called him a "motherf——ker" and a "bit——h," was agitated and had to be threatened with mace to calm appellant down. Perhaps, as the majority suggests, this evidence "afforded a narrative of the events surrounding appellant's arrest," to the extent that might have been relevant.[5] But, in truth, these statements were not made during appellant's arrest. They were made in the squad car on the way to the police station, well after appellant's arrest. Furthermore, they have no probative value whatsoever. Even an innocent man might be angry with police officers after being arrested for something he didn't do.

The prejudicial, inflammatory effect of this evidence is nonetheless apparent. What type of individual swears at police officers and calls them such vile names? How violent must one be when, handcuffed in a police car, officers have to threaten painful macing in order to calm you down? Once again the prosecution attacks appellant's character rather than focusing on the criminal allegation itself.

Unquestionably, the most egregious of the assaults on appellant's character takes place when appellant is asked during cross-examination if he recalls "standing in a courtroom and calling a prosecutor a c——nt." Even the majority acknowledges the error of permitting such testi-

---

tion. However, in *Hitchcock*, the witness was present when her estranged ex-husband murdered her paramour and assaulted her. *Id.* at 744. She gave testimony of a similar assault when they were married. *Id.* at 749–50. Contrary to *Hitchcock*, B.S. was allowed to testify of assaultive behavior not just upon her but upon her mother and brother.

**4.** This testimony is not referenced in the majority opinion.

**5.** The majority cites *State v. Ondo*, 232 S.W.3d 622, 626 (Mo.App.W.D.2007) for the position that "evidence of the circumstances surrounding a defendant's arrest ....... is admissible...." In *Ondo*, the defendant's arrest occurred the very night of the domestic assault. *Id.* at 624–25. Unlike *Ondo*, the arrest in this case occurred several years after the sexual assault.

24

mony. But, as with the other character attacks, the majority minimizes the prejudice of such evidence, noting "[i]t is difficult to see on the record before us how this testimony could have carried any weight in the jury's assessment of whether appellant had sexual intercourse with B.S."

Of course, this is the problem with such evidence. It is so inflammatory and so prejudicial that the jurors don't care whether appellant had intercourse with B.S. They will punish him for uncharged bad acts with the only means available to them, a conviction on the crime that they can punish, whether appellant did it or not. A weak case with an impeachable prosecutrix with a motive to lie and prior inconsistent accounts can become much stronger when the prosecution is allowed to portray the accused as violent, abusive, dangerous, disrespectful, obscene and arrogant, and an abuser of small children, women, police and prosecutors. Character assassination is not too strong a description of the State's prosecution against this appellant.

We should not look at each point on appeal as an isolated incident, but rather consider all of the evidence as a whole. It should be first and foremost in our minds that appellant never put his character in issue.

Although not every piece of objectionable testimony was objected to in appellant's trial, this is of no consolation to a fair analysis of his case, and warrants plain error review.[6] The steady stream of irrelevant, inflammatory uncharged bad conduct evidence washed away in prejudice any chance of appellant receiving a fair trial. This was not an unintentional slip of the tongue by the prosecutor, or an isolated mistake, harmful but accidental, which arise now and then in the heat of trial. To

the contrary, it is an intentional and calculated decision to put appellant's character on trial, in hopes that a weak case might be salvaged. This is a miscarriage of justice. Such conduct cannot be rewarded. The damage to our system of justice is too great.

Appellant should be granted a new trial.

---

6. In this case the error, as stated above, is plain and obvious and a manifest injustice or miscarriage of justice will result from the

failure to correct the alleged error. *State v. Perdue*, 317 S.W.3d 645, 652 (Mo.App. S.D. 2010).