STATE of Missouri, Respondent,

v.

Clarence THOMPSON, Jr., Appellant.

No. ED 95223.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 17, 2011.

Patricia A. Harrison, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Clarence Thompson (Defendant) appeals the judgment of conviction entered after a jury found him guilty of three counts of statutory rape and one count of statutory sodomy. Defendant claims the trial court erred by: (1) allowing the State to introduce a child witness's deposition testimony because it lacked sufficient indicia of relia-

bility as required by Section 491.075; (2) allowing the State to introduce a child witness's deposition testimony pursuant to Section 491.075, despite the statute's conflict with Rule 25.16 governing the use of depositions in criminal trials; (3) admitting evidence of uncharged sexual acts Defendant committed against the victim in another state and preventing Defendant from cross-examining the victim about her prior false allegations of abuse; and (4) admitting the victim's videotaped statements pursuant to Section 492.304 and the victim's hearsay statements through the testimony of various other witnesses pursuant to Sections 491.075. We affirm.

### Factual and Procedural Background

Viewed in the light most favorable to the verdict, the evidence presented at trial established that E.C. (Victim) was twelve years old at the time of the charged crimes and was living with Defendant, her godfather. Victim and Defendant also lived with Victim's brother K.C., then eight years of age; Victim's mother; Defendant's wife; and Defendant's infant son.

Defendant began sexually abusing Victim in Arkansas when Victim was nine years old. Victim testified that Defendant touched her, raped her, and forced her to perform oral sex on him. On one occasion, when the families were living in Arkansas, K.C. walked into the living room and saw Defendant laying on top of and "humping" Victim with his pants down.

In May 2007, Defendant's and Victim's families moved from Arkansas to St. Louis County. Upon relocating to St. Louis, Defendant, Victim, and their families stayed for several weeks in a room at the Oak Grove Inn, a motel in South County. One night, when Victim awoke to use the bathroom, Defendant followed her into the bathroom and raped her. Another night at the Oak Grove Inn, Defendant lay on

the air mattress Victim was sharing with K.C. and touched Victim's chest and vagina.

In September 2007, Victim's and Defendant's families were sharing a room in the basement of Defendant's sister's house. On September 24, 2007, Victim told her special education resource teacher, Sheronda Laden, "her stomach was hurting" and "it felt like something was wiggling in her stomach." Later that day, Victim told Ms. Laden that she needed to talk to her and confided that Defendant "was having sex with her" and "[h]e made her put his penis in her mouth, and if she told anyone, he was going to kill her mother and break her neck." Victim informed Ms. Laden that the abuse was occurring almost every night or every other night. Before sending Victim home that evening, Ms. Laden advised Victim not to bathe if Defendant abused her again.

Around 2:00 or 3:00 a.m. on September 25, 2007, Victim woke up to use the bathroom, which was on the main level of the house. When Victim reached the top of the stairs, Defendant pulled her into the kitchen, started touching her chest, removed his shirt, pulled off Victim's clothes, and continued touching Victim's chest and vagina. Defendant then raped Victim on the kitchen floor.

When Victim arrived at school on September 25, 2007, she told Ms. Laden that "it happened again." Ms. Laden called the Division of Family Services (DFS). DFS and the police brought Victim to St. Louis Children's Hospital, where hospital staff administered a rape kit to collect physical evidence. At the hospital, Victim separately spoke to Detective Angela Bruno, a child abuse detective with the St. Louis County Police, and Stephanie Whitaker, a pediatric medical social worker in the hospital's emergency department. Victim told Ms. Whitaker that, early that morning,

Defendant had pulled her into the kitchen, laid her on the floor, touched her vagina with his fingers, and "put his stuff in her vagina." Victim also told Ms. Whitaker that Defendant began abusing her when she was around nine years old.

Forensic scientists at the St. Louis County Police Department Crime Laboratory tested the items in the rape kit for bodily fluids and found sperm cells on the internal and external vaginal swabs and on Victim's underwear. The male DNA found on the vaginal swab and Victim's underpants matched Defendant's genetic profile.

The trial court conducted a jury trial in May 2010. At trial, the State presented the testimony of Victim, K.C., Ms. Laden, Ms. Whitaker, the emergency room nurse from St. Louis Children's Hospital who helped administer Victim's rape kit, the forensic interviewers at the Children's Advocacy Center (CAC) who interviewed Victim and K.C., and various police officers and forensic scientists involved in the investigation. The defense called as witnesses Defendant's wife, Defendant's sister, and Defendant's sister's boyfriend.

The jury found Defendant guilty on all four counts, and the trial court sentenced him to four concurrent sentences of life imprisonment. Defendant appeals.

### Discussion

 Defendant's first and second points on appeal are based on the admission at trial of K.C.'s deposition testimony. First, Defendant claims that the trial court abused its discretion when it allowed the State to introduce K.C.'s deposition testimony as a child hearsay statement under Section 491.075 because the deposition was used solely to bolster K.C.'s trial testimony

and it lacked sufficient indicia of reliability.[1]

Defense counsel deposed K.C., then ten years of age, on May 20, 2009 at the Circuit Attorney's office. At the beginning of the interview, defense counsel encouraged K.C. to answer her questions truthfully and confirmed that K.C. understood the different between "truth and a lie." When defense counsel asked K.C. whether he remembered "anything funny happening between" Defendant and Victim when they were living in Arkansas, K.C. answered in the affirmative. Defense counsel asked, "What do you remember?," and K.C. responded, "Him on top of my sister." K.C. told defense counsel that no one else was home when he saw Defendant "hunching" or "humping" Victim on a pallet on the floor of the bedroom Defendant shared with his wife. Victim's clothes were on "a little bit." K.C. further stated that he told his mother, but he "[s]hould have told the po-po. They would have locked him up." Defense counsel agreed that "[y]ou definitely want to tell somebody when you see stuff like that."

Prior to trial, Defendant filed a motion to "preclude hearsay statements," and the trial court held a Section 491.075 hearing on the admissibility of K.C.'s deposition statement. At the hearing, defense counsel argued that the trial court should not admit K.C.'s deposition testimony because

it lacked sufficient indicia of reliability. On May 17, 2010, the trial court ruled that the State could present K.C.'s deposition testimony if K.C. testified at trial.

At trial, K.C. testified that when his family was living with Defendant in Arkansas, he saw Defendant "humping" Victim in Defendant's room. K.C., Victim, and Defendant were the only people home at the time. Victim was laying face down on the floor and Defendant was laying on top of her with his pants down. K.C. then went to the room he shared with Victim, and Defendant later "came by" and "smiled at [him] and gave [him] a thumbs up." After K.C. testified, the prosecutor sought to admit K.C.'s deposition testimony, and defense counsel renewed her objection. The trial court admitted the deposition, which was read aloud to the jury.

■■■ At the Section 491.075 hearing and at trial, Defendant objected to admission of the deposition testimony on the ground that it lacked sufficient indicia of reliability. Defendant did not raise at trial the argument that K.C.'s deposition testimony improperly bolstered K.C.'s trial testimony. "The grounds asserted on appeal are limited to those stated at trial." *State v. Gaines*, 316 S.W.3d 440, 449 (Mo.App. W.D.2010). Defendant therefore failed to preserve his bolstering claim for appellate review.[2] *See State v. Mattic*, 84 S.W.3d 161, 168 (Mo.App. W.D.2002).

1. In the discussion section of his brief, Defendant also argues that, in allowing the State to admit K.C.'s deposition testimony, the trial court "ignored the intent behind the discovery deposition" and forced Defendant "to choose between his right to a fair trial, to fully prepare a defense and to effectively cross examine witnesses. . . . ." Rule 84.04(e) provides that "[t]he argument shall be limited to those errors included in the 'Points Relied On.' " Mo. Sup. Court Rule 84.04(e). "Issues that are reflected only in the argument section of the brief are not presented for appellate review." *State v. Nibarger*, 304 S.W.3d 199,

205 n. 5 (Mo.App. W.D.2009). Because Defendant did not include this argument in his point relied on, we will not consider it on appeal.

2. Because Defendant did not preserve his argument that admission of K.C.'s deposition testimony improperly bolstered K.C.'s in-court testimony, it is subject only to plain error review. *See Gaines*, 316 S.W.3d at 449; Mo. Sup. Court Rule 30.20. "Unless a claim of plain error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, we will

■ With regard to Defendant's claim that K.C.'s deposition testimony lacked sufficient indicia of reliability, we review the trial court's decision to admit the deposition testimony for an abuse of discretion. *State v. Redman*, 916 S.W.2d 787, 792 (Mo. banc 1996). We will find that a trial court abused its discretion in admitting a child's out-of-court statements pursuant to Section 491.075 only where the trial court's findings are not supported by substantial evidence in the record. *In re N.J.K. v. Juvenile Officer*, 139 S.W.3d 250, 255 (Mo. App. W.D.2004). "If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.* at 256.

■ Section 491.075.1 provides:

A statement made by a child under the age of fourteen relating to an offense under chapter 565, 566, 568 or 573, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) (a) The child testifies at the proceedings; or

(b) The child is unavailable as a witness; or

(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

Mo.Rev.Stat. § 491.075.1. To determine the reliability of a child's out-of-court statements for purposes of Section 491.075, Missouri courts look to the totality of the circumstances and consider the following non-exclusive list of factors: (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) lack of motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age. *In re N.J.K.*, 139 S.W.3d at 256. Other important factors include the lapse of time between when the acts occurred and when the victim reported them and the technique employed by the interviewer. *Gaines*, 316 S.W.3d at 449; *In re N.J.K.*, 139 S.W.3d at 258.

Defendant argues that K.C.'s deposition testimony was unreliable and should not have been admitted at trial because defense counsel, who deposed K.C., was not trained to interview children. Defendant also contends that K.C.'s statements were unreliable because they were made more than two years after the incident he described, the statements were not spontaneous, the deposition was not conducted at a neutral location, and K.C. did not use language unexpected from a child of his age.

Based on our review of the record, we find that the totality of the circumstances surrounding K.C.'s deposition provide sufficient indicia of reliability. *See State v. Sheridan*, 188 S.W.3d 55, 67 (Mo.App. E.D.2006). K.C.'s deposition testimony was consistent with both his videotaped CAC interview, which was introduced into evidence, and his in-court testimony. Also, although K.C.'s deposition statement was not spontaneous, it was consistent

not exercise our discretion to review for plain error." *State v. Thesing*, 332 S.W.3d 895, 899 (Mo.App. S.D.2011). We find there is no ob-

vious and clear error here and certainly no manifest injustice or miscarriage of justice as a result.

with spontaneous statements he made at the CAC interview. Defendant does not claim that K.C.'s mental state at the time of the deposition rendered his statements unreliable or that K.C. had a motive to fabricate his testimony. Finally, Defendant fails to cite any authority to support his argument that a lawyer's deposition questioning techniques may be a basis for finding the child's statements unreliable. The record shows that the majority of defense counsel's questions to K.C. were non-leading questions seeking details such as where and how the incident occurred. Defense counsel's questioning techniques did not render K.C.'s statements unreliable. Because the record supports a determination of reliability, we conclude that the trial court did not abuse its discretion in admitting K.C.'s deposition testimony.

■■■ Even if the trial court erred in admitting K.C.'s deposition testimony, "[e]rror in admitting evidence is not prejudicial requiring reversal unless it is outcome-determinative." *State v. Washington*, 260 S.W.3d 875, 880 (Mo.App. E.D. 2008). "[A]dmission of improper evidence is harmless if the other evidence of guilt is overwhelming." *State v. Stone*, 280 S.W.3d 111, 117 (Mo.App. E.D.2009) (quo-

tation omitted). Here, Victim testified at trial that Defendant raped her on the night of September 24, 2007, and the State presented evidence that semen matching Defendant's genetic profile was found in Victim's vagina on September 25, 2007.[3] The evidence of Defendant's guilt was overwhelming. Accordingly, the admission of K.C.'s deposition testimony could not have had a decisive effect on the jury's determination of guilt. *See, e.g., State v. Davis*, 318 S.W.3d 618, 641–42 (Mo. banc 2010). Point denied.

■■■ In his second point on appeal, Defendant claims the trial court plainly erred in allowing the State to introduce K.C.'s deposition testimony pursuant to Section 491.075 because the statute conflicts with Rule 25.16.[4] While Rule 25.16 only allows deposition transcripts to be used as substantive evidence if the witness is unavailable to testify, Section 491.075 allows a child witness's out-of-court statement to be admitted as substantive evidence when the child does testify at trial. Defendant contends the trial court erred in following the statute and not the rule because, when there is a conflict between a rule and a statute relating to procedure, the rule prevails. *See State ex rel. Union Elec. Co. v.*

---

**3.** A DNA analyst who tested the semen samples from Victim's rape kit testified that "this particular male DNA profile is extremely rare." Specifically, he stated that the estimated frequency of that DNA profile in the unrelated population was one in 142 quadrillion Caucasians and one in 50 quadrillion 480 trillion unrelated African Americans.

**4.** Rule 25.16 provides:
At the trial or upon any hearing, any deposition obtained in accordance with Rules 25.12, 25.14 or 25.15, so far as it is otherwise admissible under the rules of evidence, may be used by the state if:
(a) The defendant:
(1) Was personally present at the deposition and had the right of confrontation and cross-examination at the deposition, or

(2) Personally waived that right to be present and the right of confrontation in writing or in open court, or
(3) Failed to attend the deposition after the court ordered the defendant to do so; and
(b) The witness is unavailable in that the witness:
(1) Is dead,
(2) Is unable to attend or testify because of sickness or infirmity,
(3) Has invoked a testimonial privilege or other refusal to testify not produced by the action of the state, or
(4) Is otherwise unavailable and the state has made a good faith effort to obtain the presence of the witness at the hearing or trial, but has been unable to procure the attendance of the witness.

*Barnes,* 893 S.W.2d 804, 805 (Mo. banc 1995).

█ Defendant concedes that he did not preserve this issue for appellate review. He therefore requests plain error review under Rule 30.20, which provides: "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." Mo. Sup. Court Rule 30.20. "Before conducting plain error review, a reviewing court must first determine whether the trial court's action would amount to manifest injustice, assuming the court's action was erroneous. If not, then plain error review is inappropriate." *State v. Comte,* 141 S.W.3d 89, 94 (Mo.App. S.D. 2004).

Because the evidence of Defendant's guilt was overwhelming, no manifest injustice or miscarriage of justice resulted requiring relief under the plain error rule. *See State v. Forrest,* 183 S.W.3d 218, 224 (Mo. banc 2006). The State presented evidence that on September 24, 2007, Victim told her teacher that Defendant had been having sex with her. On September 25, 2007, Victim told her teacher that Defendant had raped her again the previous night. DFS took Victim to the hospital and a rape kit was administered, the later testing of which revealed Defendant's semen in Victim's vagina. Point denied.

█ In his third point on appeal, Defendant claims the trial court erred when it: (1) overruled Defendant's motion in limine and subsequent objection to the admission of several witnesses' testimony regarding prior uncharged acts of sexual abuse that Defendant committed against Victim in Arkansas; and (2) prevented defense counsel from cross-examining Victim about prior false allegations she made in Arkansas. A trial court has broad discretion to admit or exclude evidence at trial,

and we will reverse a trial court's ruling on the admission of evidence only if the court clearly abused its discretion. *Forrest,* 183 S.W.3d at 223. A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.* Additionally, on appeal, we review the trial court's ruling "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* at 223–24.

Prior to trial, Defendant filed a motion in limine seeking to exclude any evidence of uncharged crimes Defendant committed against Victim in Arkansas. The trial court overruled the motion in limine as well as defense counsel's later objections at trial to testimony that Defendant had intercourse and oral sex with Victim when they were living in Arkansas. Subsequently, the following evidence came in at trial: K.C. testified that, when they were living in Arkansas, he once walked in on Defendant "humping" Victim; Victim testified that Defendant began sexually abusing her when she was nine years old and living with Defendant in Arkansas; and various police officers and social workers who interviewed Victim and K.C. testified that the children recounted to them incidents of abuse against Victim that occurred in Arkansas.

█ Generally, evidence of criminal acts other than the ones for which a defendant is on trial are not admissible. *State v. Loazia,* 829 S.W.2d 558, 567 (Mo.App. E.D.1992). However, evidence of a defendant's prior misconduct is admissible if it is logically and legally relevant. *State v. Thurman,* 272 S.W.3d 489, 495 (Mo.App. E.D.2008). "Missouri courts have admitted evidence of prior sexual misconduct for purposes other than propensity, such as

establishing motive or intent." *State v. Uptegrove,* 330 S.W.3d 586, 593 (Mo.App. W.D.2011).

Defendant's prior sexual conduct toward Victim is admissible because it proves his sexual desire for Victim, which in turn, establishes a motive for commission of the sexual crimes for which he was tried. *See Thurman,* 272 S.W.3d at 495. Accordingly, we find that the trial court's rulings admitting evidence of Defendant's prior uncharged acts of sexual misconduct toward Victim were neither clearly against the logic of the circumstances nor so unreasonable as to indicate a lack of careful consideration. *See id.*

■ Defendant also claims that the trial court erred in prohibiting defense counsel from cross-examining Victim about "prior false accusations in Arkansas." Defendant asserts that exclusion of this evidence prejudiced him because the evidence would have supported his theory that Victim fabricated the allegations that were the bases of the charges at trial.

■ In determining whether a party may introduce extrinsic evidence to impeach a witness, a trial court must consider "whether admission of the extrinsic evidence would be more probative or more prejudicial." *Mitchell v. Kardesch,* 313 S.W.3d 667, 682 (Mo. banc 2010). "[N]ot all dishonest statements are admissible for purposes of impeaching a witness's character for truth and veracity." *State v. Winfrey,* 337 S.W.3d 1, 10 (Mo. banc 2011).

■ A defendant in a sexual assault or rape case may be entitled to present evidence that the prosecuting witness made prior false allegations of sexual misconduct on the grounds that such evidence is probative of that witness's credibility and veracity. *State v. Long,* 140 S.W.3d 27, 31 (Mo. banc 2004); *see also Mitchell v.*

*Kardesch,* 313 S.W.3d 667, 682 (Mo. banc 2010) (examining *Long* ). However, for extrinsic evidence of a victim's false allegations to be admissible, the defendant must first establish by a preponderance of the evidence that the witness "previously made knowingly false allegations." *Long,* 140 S.W.3d at 32. Additionally, the defendant must show that, due to the nature of the false statements and the circumstances under which they were made, that evidence is relevant to the witness's character for truth or veracity. *See Winfrey,* 337 S.W.3d at 10.

We look to Defendant's offers of proof to determine whether the trial court properly balanced the considerations of probative value and prejudice when it excluded Defendant's proffered evidence. *State v. Bracken,* 333 S.W.3d 48, 53 (Mo.App. E.D. 2010). Although defense counsel did not attempt at trial to impeach Victim with evidence of prior false accusation of sexual misconduct, she made two offers of proof after Victim was excused. First, defense counsel made an offer of proof as to a videotaped statement in which Victim referred to sexual abuse by people other than Defendant. Defense counsel neither challenged the truthfulness of those allegations nor explained their probative value.

Second, defense counsel made an offer of proof as to the business records from the Arkansas DFS, stating:

> The second offer of proof that we would like to make is going to be marked as Defendant's Exhibit 1. It is an affidavit of business records as well as the records from the Arkansas Division of Family Services regarding [Victim's] prior allegation against my client in Arkansas. That was deemed unfounded by Arkansas Division of Family Services. I understand the Court's previous ruling on this, but we would like to make an offer of proof in regards to it because I

would have liked to have cross-examined her about that.

Defendant's offer of proof neither provided any details of the allegedly false prior allegations nor explained the probative value of the Arkansas DFS records. *See, e.g., Bracken,* 333 S.W.3d at 54. Defense counsel did not argue that the Arkansas DFS records were admissible to show that Victim "previously made knowingly false allegations." *See, e.g., Long,* 140 S.W.3d at 32. Defense counsel merely stated that the Arkansas DFS deemed Victim's allegations "unfounded." The fact that an agency determined that a witness's prior allegations were unfounded does not alone demonstrate that those allegations were false. *See State v. Ridenour,* 334 S.W.3d 724, 730–31 (Mo.App. S.D.2011).

Because Defendant did not provide the trial court information relating to the nature and circumstances of Victim's previous allegations, Defendant failed to show that the proffered evidence was probative of Victim's character for truth or veracity. *See Winfrey,* 337 S.W.3d at 10. We therefore find that the trial court did not abuse its discretion in excluding extrinsic evidence of Victim's prior allegations against Defendant.

Even if the trial court erred by improperly excluding admissible evidence, Defendant fails to demonstrate prejudice. A trial court's exclusion of admissible evidence creates a presumption of prejudice, which is rebutted when the error is harmless beyond a reasonable doubt. *State v. Norman,* 145 S.W.3d 912, 919–920 (Mo. App. S.D.2004). "If the proof of defendant's guilt was overwhelming, the state will have rebutted the presumption of prejudice." *State v. Barriner,* 111 S.W.3d 396, 401 (Mo. banc 2003). In light of the overwhelming evidence of Defendant's guilt, including physical DNA evidence, we cannot say the jury's verdict would have been different had it heard impeachment evidence relating to Victim's character for truth. Point denied.

 In his final point on appeal, Defendant claims the trial court abused its discretion in admitting Victim's videotaped statements pursuant to Section 492.304 and hearsay statements pursuant to Section 491.075 because Victim was over fourteen years of age at the time of trial. Whether the trial court correctly interpreted and applied Section 491.075 is a question of law, which we review *de novo. State v. Bass,* 81 S.W.3d 595, 602 (Mo.App. W.D.2002). "When interpreting statutes, our primary responsibility is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Id.* (quotation omitted). "The legislature is presumed to have intended what the statute says; consequently, when the legislative intent is apparent from the words used and no ambiguity exists, there is no room for construction." *Id.* (quotation omitted).

Section 492.403 provides for the admission of "a visual and aural recording of a verbal or nonverbal statement of a child when under the age of fourteen who is alleged to be a victim of an offense...." Similarly, Section 491.075 provides, in relevant part: "A statement made by a child under the age of fourteen relating to an offense under chapter ... 566 ... performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted...." Mo.Rev.Stat. § 491.075.1. The clear wording of the statutes conditions admissibility of a child's hearsay statement on the child's age at the time the statement was made. Nothing in

the language of the statutes suggests that the admissibility of a child's hearsay statement turns on the age of the child at the time of trial.

There is no dispute that Victim was under the age of fourteen at the time the crimes were committed and at the time she made the statements in question. *See, e.g., Mattic*, 84 S.W.3d at 169. We therefore conclude that the Victim met all the requirements of Sections 492.304 and 491.075, and the trial court did not err in admitting these statements. Point denied.

### *Conclusion*

The judgment of the trial court is affirmed.

GARY M. GAERTNER, JR., P.J., and MARY K. HOFF, J., concur.