Gary M. Gaertner, Jr., Judge
Introduction
Robert E. Lee (Defendant) appeals the judgment entered upon his conviction by jury of one count of second-degree statutory rape, two counts of second-degree statutory sodomy, and one count of incest. Defendant argues that the trial court abused its discretion by allowing both the victim, S.V. (Victim), and a police officer to testify that Victim was afraid Defendant might hurt her because Victim's grandmother had told her Defendant had harmed Victim's mother. Defendant further argues that there was insufficient evidence to find Defendant guilty beyond a reasonable doubt of second-degree statutory rape and second-degree statutory sodomy because Missouri's definition of "life" in Section 1.205 requires age to be calculated from conception, rather than from birth. We affirm.
Background
Defendant's convictions arose out of an incident on March 19, 2016. The evidence at trial, viewed in the light most favorable to the judgment,[1] was the following. Victim was born on June 1, 1999, and Defendant is her biological father. Victim testified that Defendant was not part of her life much when she was growing up, but at the beginning of 2016, she started seeing him more. They would go to a hotel or out to eat, and Defendant's girlfriend and her daughter would be with them or Victim's brothers, both of whom are also Defendant's biological children. On the other occasions when Victim had gone to a hotel or spent the night with Defendant, they had never been alone.
On March 19, 2016, Defendant texted Victim and Victim said she was bored and asked to hang out with him. Defendant *490 came to pick her up from her grandmother's house. They walked to Jack-in-the-Box to get some food, Defendant bought beer at a nearby gas station, and then they walked to a Super 8 Motel. The motel would not allow Defendant to rent a room because he was banned from that motel, so they called a cab and went to a Day's Inn Hotel, They went into a room at that hotel. Defendant drank beer and smoked marijuana. He was watching pornography on his phone and started showing it to Victim, which made Victim uncomfortable.
Victim testified that Defendant then began touching her leg inappropriately by rubbing her thigh, which made her more uncomfortable. Victim had a hole in her pants between her legs, and Defendant put his finger into it and touched her vagina. Victim testified she was uncomfortable, but she was too scared to do anything because she didn't know what would happen if she did. Then he took off her pants and put his mouth on her vagina. Victim did not react because she was too scared to do anything. She testified her grandmother had told her Defendant used to hit Victim's mother. After Defendant put his mouth on Victim's vagina, he then put his penis in her vagina. He also kissed her on her mouth and on her breasts.
After this, Defendant started to put his clothes back on, and Victim told him she was hungry and she wanted to go to the vending machine. Victim went to the hotel lobby and started texting one of her friends, Trent Croppens (Croppens). She asked Croppens to come pick her up. Victim asked a hotel employee at the front desk for the address of the hotel. The hotel employee testified that Victim was distraught, and the hotel employee gave Victim a business card with the hotel address. Victim talked to Croppens on a video call on her phone. After this call she stopped at the vending machine so her father would see she actually went to the vending machine, and then she went back to the room. She did not want to be gone long because she was afraid Defendant would come looking for her if she did not go back to the room.
At some point after Victim came back to the hotel room, the police arrived at the door to the room in response to a call they received from Croppens that Victim was worried her father might harm her. Defendant allowed the officers to come in, and Officer Nicholas Houck testified he saw Victim sitting on the ground on her knees, in between the bed and the wall that connects to the bathroom. Victim came into the hallway with Officer Houck and he asked her what happened. She whispered to him that her father had raped her, and that she was scared and she wanted to leave. Officer Houck called additional officers to come to the scene, and while they were talking to Victim, Officer Houck stayed with Defendant. Defendant did not ask about why the officers were there, which Officer Houck found suspicious.
Officer Brett Matzes also spoke with Victim at the hotel. She told him that Defendant showed her pornography and began to touch her leg, which made her feel uncomfortable. Victim was uncomfortable telling the officer what happened, she kept starting and stopping and her legs were twitching, so Officer Matzes asked her very direct questions about what happened. He asked whether Defendant had sex with Victim, and she nodded affirmatively. She also said she was afraid Defendant might harm her because her grandmother had told her that Defendant had harmed Victim's mother in the past.
Officer Brandon Malatovic interviewed Defendant, who denied Victim's allegations, Officer Malatovic requested that Defendant submit to a DNA swab of Defendant's cheek and his genitalia, which *491 Defendant refused. Officer Malatovic obtained search warrants for the DNA, and police obtained samples from Defendant's cheek and penis. Police also took Victim to the hospital, and hospital personnel examined Victim and collected DNA samples from Victim's mouth and breast. DNA analysis showed Defendant was the major contributor to a DNA mixture from Victim's right breast, and that Victim was the major contributor to DNA from Defendant's penis. Swabs from Victim's vagina showed no seminal fluid.
The jury convicted Defendant of one count of statutory rape, two counts of statutory sodomy, and one count of incest. The trial court sentenced Defendant as a persistent misdemeanor offender to seven years on each of the first three counts, two of them to run concurrently and both consecutively to the third, and then the four-year sentence to run consecutively to the other counts, for a total of 18 years. This appeal follows.
Discussion
Defendant raises five points on appeal. In Points I and II, Defendant argues that the trial court abused its discretion in allowing Victim and Officer Matzes, respectively, to testify that Victim's grandmother had told her that Defendant had harmed Victim's mother in the past, because it was inadmissible evidence of uncharged crimes. In Points III, IV, and V, Defendant argues that for the counts of statutory rape and each count of statutory sodomy, respectively, the State failed to prove beyond a reasonable doubt that Victim was less than 17 years old, in light of Missouri's statutory definition of life beginning at conception rather than at birth.
Evidence of Uncharged Misconduct
Defendant raises the same argument in Points I and II, claiming that the trial court abused its discretion by allowing Victim and Officer Matzes to testify regarding what Victim's grandmother had told her about Defendant hurting Victim's mother in the past. Defendant argues this evidence was inadmissible as evidence of uncharged crimes, was not relevant, and was more prejudicial than probative. We disagree.
Admission or exclusion of evidence is a matter within the broad discretion of the trial court. State v. Thompson, 341 S.W.3d 723, 731 (Mo. App. E.D. 2011). We will reverse a trial court's ruling on admission of evidence only where the court clearly abuses its discretion, in that its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Id. We review for prejudice, not mere error, and will reverse only where an error was so prejudicial as to deprive the defendant of a fair trial. Id. (citation omitted).
"Evidence of prior uncharged misconduct is inadmissible for the sole purpose of showing the propensity of the defendant to commit such acts." State v. Jensen, 524 S.W.3d 33, 41 (Mo. banc 2017) (citation omitted). However, there are some purposes for which evidence of uncharged misconduct may be permissible, including presenting "a complete and coherent picture of the circumstances of the charged offense." Id. (internal quotation omitted). Such evidence can be admissible where it is both logically relevant, in that it has some legitimate tendency to directly establish the defendant's guilt of the charged crimes, and legally relevant, in that its probative value outweighs its prejudicial effect. State v. Sprofera, 372 S.W.3d 17, 19 (Mo. App. W.D. 2012). Additionally, courts have allowed evidence of a defendant's prior misconduct to "explain that a witness's fear of the defendant led to a delay in reporting a matter to the *492 police," Id. at 20 (quoting State v. Hitchcock, 329 S.W.3d 741, 750 (Mo. App. S.D. 2011) ).
Here, the trial court did not abuse its discretion in allowing testimony that Victim's grandmother had told Victim that Defendant had previously hurt Victim's mother. The testimony arose in the context of Victim describing her fear. During Victim's testimony, she explained she did not try to resist Defendant because she was very afraid and she did not know what Defendant would do if she resisted, and the State elicited her knowledge of Defendant's harm to Victim's mother as context. Officer Matzes testified that Victim told him she was very afraid and that Victim knew of Defendant's prior harm to her mother, "so she was afraid that he would physically assault her as well." Defendant's defense at trial was that Victim made up this story and was not scared of Defendant. Defense counsel cross-examined Victim regarding her fear, specifically asking her why she did not try to call the police and why she went back to her room. The trial court did not abuse its discretion in allowing evidence of Victim's knowledge of what Defendant had done to Victim's mother in the past in order to give a complete picture of the circumstances; specifically, to demonstrate Victim's fear of Defendant and her hesitance to report what happened to the police. Points I and II denied.
Evidence of Victim's Age
Defendant raises an identical argument in each of his remaining three points. He argues that for each of the charged crimes requiring the jury to find that Victim was less than 17 years of age, the State failed to meet its burden of proof because Missouri defines life as beginning at conception rather than birth, and calculating Victim's age from conception would make her over 17 years old on March 19, 2016. This argument is without merit.
First, regarding preservation of error, Defendant argues this claim involves the sufficiency of the evidence, which he included generally in his motion for new trial, but is preserved under Rule 29.11(d) regardless. However, Defendant's challenge consists of a legal argument regarding statutory interpretation, which we would normally review de novo. See State v. Murphy, 443 S.W.3d 721, 724 (Mo. App. E.D. 2014) (distinguishing legal argument from sufficiency-of-evidence claim). Defendant did not raise this argument before the trial court, thus we may only review it for plain error under Rule 30.20.
We find no error, plain or otherwise, in the use of Victim's date of birth as the proper means for calculating her age under the statutes for statutory sodomy and statutory rape here. Both statutes require the State to prove that the victim was "less than seventeen years of age." Section 566.034, RSMo. (Supp. 2016) (statutory rape); Section 566.064, RSMo. (Supp. 2016) (statutory sodomy). The incident here took place on March 19, 2016. Victim testified her date of birth was June 1, 1999, and that she was 16 years old on March 19, 2016. Defendant does not dispute the accuracy of either date.
Rather, Defendant points to Section 1.205.1, RSMo. (2000), which states, "The general assembly of this state finds that: (1) The life of each human being begins at conception[.]" Defendant argues that based on a 280-day gestational period in utero , Victim's life had existed for longer than 17 years as of March 19, 2016. Other courts have already flatly rejected such an argument. Stiles v. Blunt, 912 F.2d 260, 269 (8th Cir. 1990) (finding "no evidence that the [Missouri] legislature intended to change the sensible and time-honored method of calculating age when it enacted *493 section 1.205"); State v. Crider, 554 S.W.3d 460, 462 (Mo. App. W.D. 2018) (holding " Section 1.205 does not provide a legal basis for calculating the age of a person based on the date of conception"). Similarly, here we find no inconsistency in defining life as beginning at conception in terms of determining whether a child in utero can be the victim of a crime, and treating age in other statutes as constituting the time since a person's date of birth. Not only does Defendant's argument lack a logical basis in this context, but the Missouri legislature has revised the criminal code more than once since the enactment of Section 1.205 and has made no change regarding age. We decline to do so in place of the legislature, finding that date of birth continues to be the only sensible method of calculating age under the criminal code. Points denied.
Conclusion
The trial court did not abuse its discretion in allowing Victim and the officer to testify regarding the basis of Victim's fear of Defendant under the circumstances here. Additionally, we find no legal error in the use of Victim's date of birth to conclude she was less than 17 years of age at the time of these crimes. We affirm the judgment of the trial court.
Kurt S. Odenwald, P. J., concurs.
Colleen Dolan, J., concurs

State v. Belton, 153 S.W.3d 307, 309 (Mo. banc 2005).