

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | **WD83333** |
| Respondent, | ) | |
| | ) | Filed: March 28, 2023 |
| v. | ) | |
| | ) | |
| THOMAS EUGENE ANTLE, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Randolph County
The Honorable Frederick P. Tucker, Judge**

**Before Special Division: Mark D. Pfeiffer, P..J,
and Alok Ahuja and Karen King Mitchell, JJ.**

Following a jury trial, Thomas Antle was convicted in the Circuit Court of
Randolph County of one count of statutory sodomy in the first degree and one
count of child molestation in the first degree. Both counts involved the same
female Victim, who was three years old at the time.

Antle appealed. We held that the circuit court had applied an incorrect
legal standard in determining that out-of-court statements made by the Victim to
four adults were admissible under § 491.075.[1] *State v. Antle*, 657 S.W.3d 221,
228-30 (Mo. App. W.D. 2021) ("*Antle I*"). Rather than reversing Antle's

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri,
updated through the 2018 Cumulative Supplement.

convictions, however, we remanded to the circuit court for a determination whether the Victim's statements were admissible when the proper legal standards were applied. *Id.* at 231-32.

On remand, the circuit court once again concluded that the Victim's extrajudicial statements satisfied the standards for admissibility under § 491.075. In his post-remand briefing in this Court, Antle does not challenge the circuit court's conclusion concerning the majority of the Victim's out-of-court statements. He does, however, ask us to reverse the circuit court's conclusion that the Victim's statements to a forensic interviewer, disclosing hand-to-genital contact, were admissible. These statements were the Victim's only disclosure of hand-to-genital contact, and constituted the sole support for Antle's conviction for first-degree child molestation.

We conclude that the circuit court did not abuse its discretion in finding the challenged statements admissible. We accordingly affirm Antle's convictions.

## Factual Background

Our initial opinion describes the facts underlying Antle's convictions in detail. *See Antle I*, 657 S.W.3d at 225-27. We provide only a brief summary here.

Antle was charged and convicted of two sexual offenses against the female Victim, who was three years old at the time: first-degree statutory sodomy (for putting his penis in the Victim's mouth): and first-degree child molestation (for touching her vaginal area through her clothes). Antle was acquitted of two counts of sexual abuse involving another minor female; those charges are not relevant to this appeal.

The Victim was eleven years old at the time of trial. She testified that she was not "able to remember today what happened to [her] when [she was] three."

2

The evidence supporting Antle's convictions came largely from the out-of-court statements Victim made to four adults: her Father; her Grandmother; forensic interviewer Holly Calvert; and counselor Debbie Danner.

Prior to trial, the circuit court conducted a hearing pursuant to § 491.075 to determine the admissibility of the Victim's extrajudicial statements. The circuit court concluded that the extrajudicial statements bore "sufficient indicia of reliability" to be admissible under § 491.075.1(1). In making that determination, "the circuit court repeatedly stated that the only inquiry required by § 491.075 was whether the adult witnesses to whom Victim made disclosures were 'accurately repeating what the child said.'" *Antle I*, 657 S.W.3d at 228-29.

Based on the circuit court's pre-trial evidentiary ruling, the Victim's Father and Grandmother, as well as Danner and Calvert, were permitted to testify concerning the statements Victim had made to them concerning sexual abuse by Antle. The jury convicted Antle of both counts alleging sexual abuse of the Victim. The circuit court sentenced him to twenty-five years' imprisonment for statutory sodomy, and ten years for child molestation, with the sentences ordered to run consecutively.

Antle appealed. As relevant here, he argued that the circuit court had applied an incorrect legal standard in determining that the Victim's out-of-court statements satisfied the reliability standard of § 491.075. We agreed:

> The circuit court erred in admitting Victim's out-of-court statements based solely on its determination that the adult witnesses and video recording accurately depicted what Victim had said. Section 491.075 requires the court to do more than simply determine if a child's out-of-court statements are being accurately reported. Under the statute, the court must determine that the "time, content

3

and circumstances" of the child's statements "provide sufficient indicia of reliability."

*Antle I*, 657 S.W.3d at 229-30 (quoting § 491.075.1(1)).  In making the reliability determination, we held that the circuit court was required to apply a "[t]otality-of-the-circumstances test," which

> requires consideration of several non-exclusive factors, such as:
>> (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) lack of a motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age.  Other important factors include the lapse of time between when the acts occurred and when the victim reported them and the technique employed by the interviewer.

*Id.* at 228 (quoting *State v. Thompson*, 341 S.W.3d 723, 729 (Mo. App. E.D. 2011) (citations omitted)).

Besides finding that the circuit court had applied an erroneous legal standard, we also concluded that admission of the Victim's extrajudicial statements was "plainly prejudicial."  *Antle I*, 657 S.W.3d at 231.  We noted that "[t]here was no physical evidence corroborating Victim's accusations against Antle," and that "Victim failed to testify to any abuse by Antle whatsoever"; thus, "the <u>only</u> evidence of Antle's guilt came from Victim's out-of-court statements." *Id.*

Although we found that the circuit court had made erroneous evidentiary rulings which prejudiced Antle, we concluded that reversal of his convictions for a new trial was not necessarily required.  Instead, we held that

> a limited remand, for determination of the evidentiary issue under proper legal standards, is appropriate.  If the circuit court determines on remand that the challenged evidence was *inadmissible* under the proper legal standards, then a new trial may be warranted.  If, however, the court determines on remand that the

evidence was properly admissible under the correct legal test, then it should certify a supplemental record to this Court, to permit us to review the evidentiary rulings on a full record.

*Id.*

On March 15, 2022, the circuit court held a further § 491.075 hearing on remand from this Court. At the hearing, the court heard live testimony from Holly Calvert, who conducted the Victim's forensic interview on October 11, 2011, and from Dr. Anne Duncan-Hively, a defense expert on forensic interviewing techniques. The court also received into evidence a number of exhibits, including a video recording of the Victim's forensic interview; anatomical diagrams labeled during that interview; and a transcript of the Victim's trial testimony.

Both the State and Antle submitted proposed orders to the court following the hearing. Notably, Antle's proposed order conceded that the statements made by the Victim to her Father, her Grandmother, her counselor Debbie Danner, and to Calvert concerning oral sex, were all sufficiently reliable to be admissible under § 491.075. Antle's proposed judgment would have found only that the Victim's disclosures to Calvert concerning hand-to-genital contact were unreliable, and therefore inadmissible.

The circuit court adopted the State's proposed order verbatim, and found all of the Victim's out-of-court statements to be reliable. The court's order, issued on March 28, 2022, found:

> When considering the totality of the circumstances surrounding [Victim's] statements the Court finds that [Victim's] disclosure was spontaneous and consistently repeated, that there is no evidence before the Court that [Victim] was mentally unsound or that she had any motive to fabricate her story, that in describing Defendant's "thing" in her mouth, she demonstrated knowledge of subject matter unexpected in a child her age, that [Victim]

spontaneously disclosed close in time to the abuse, and that none of [Victim's] statements were pressured or coerced.

The court accordingly found that "the time, content and circumstances of the statements made by [the Victim] . . . provide sufficient indicia of reliability pursuant to Section 491.075, RSMo," and were admissible given that the Victim herself testified at trial. The court's order specifically stated that "[t]he Court gives no weight to the testimony of Dr. Anne Duncan-Hively."

Notably, the court's order makes no specific mention of the Victim's statements that Antle had touched her vagina with his hand – statements which the Victim made *only* in her forensic interview with Calvert, and which were the *only* statements whose admissibility Antle continued to challenge. Several of the court's findings have no direct application to the Victim's disclosure of hand-to-genital contact, such as its findings: that the Victim's allegations were "consistently repeated"; that the Victim "spontaneously disclosed close in time to the abuse"; and that the Victim's description of oral sex "demonstrated knowledge of subject matter unexpected in a child her age."

Following entry of the circuit court's order on remand, Antle requested that we review it.

## Standard of Review

We review a circuit court's decision to admit testimony under § 491.075 for abuse of discretion. *State v. Hawkins*, 604 S.W.3d 785, 791 (Mo. App. W.D. 2020). A circuit court abuses its discretion in admitting a child's out-of-court statements under § 491.075 when its findings are not supported by substantial evidence in the record. *State v. Ragland*, 494 S.W.3d 613, 622 (Mo. App. W.D. 2016). "'A trial court has broad discretion to admit or exclude evidence at trial.'"

6

*Hawkins*, 604 S.W.3d at 791 (quoting *State v. Perry*, 275 S.W.3d 237, 245 n.5 (Mo. 2009)). "The trial court abuses its discretion if its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Joyner*, 458 S.W.3d 875, 880 (Mo. App. W.D. 2015).

"We emphasize that, '[u]nder our standard of review, we do not determine whether we would have reached the same decision as the trial court.'" *Coble v. NCI Bldg. Systems, Inc.*, 378 S.W.3d 443, 451 (Mo. App. W.D. 2012) (quoting *Mocciola v. Mocciola*, 834 S.W.2d 872, 874 (Mo. App. E.D. 1992)). "If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *N.J.K. v. Juvenile Officer*, 139 S.W.3d 250, 256 (Mo. App. W.D. 2004).

## Analysis

In his supplemental post-remand briefing, Antle does not challenge the admissibility of Victim's statements (to Father, Grandmother, Danner, and Calvert) that he had placed his penis in her mouth; those statements collectively provided the basis for Antle's conviction of first-degree statutory sodomy. Instead, Antle now challenges *only* the admissibility of the Victim's disclosure to Calvert that he had touched her vagina over her clothing. This disclosure was the basis for Antle's conviction for first-degree child molestation, and was made *only* during the Victim's forensic interview with Calvert.

Section 491.075.1 provides that out-of-court statements of a child who is under fourteen years old, relating to certain sexual offenses, is admissible as substantive evidence if:

(1)  The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a)  The child or vulnerable person testifies at the proceeding[ ] . . . .

§ 491.075.1.

As we explained in *Antle I*, courts apply a "totality-of-the-circumstances test" in making the reliability determination required by § 491.075.1(1).  657 S.W.3d at 228.  This test

> requires consideration of several non-exclusive factors, such as:
>
> (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) lack of a motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age.  Other important factors include the lapse of time between when the acts occurred and when the victim reported them and the technique employed by the interviewer.

*Id.* (quoting *State v. Thompson*, 341 S.W.3d 723, 729 (Mo. App. E.D. 2011) (citations omitted)).

We have consistently emphasized that a lack of leading questions, pressure tactics, and excessive prompting are important factors in finding that minor victims' out-of-court statements are spontaneous and have sufficient indicia of reliability.  *See, e.g., State v. Gibbons*, 629 S.W.3d 60, 88-90 (Mo. App. W.D. 2021); *N.J.K. v. Juvenile Officer*, 139 S.W.3d 250, 258-59 (Mo. App. W.D. 2004); *State v. Sprinkle*, 122 S.W.3d 652, 662-63 (Mo. App. W.D. 2003).  Although extrajudicial statements must satisfy the "sufficient indicia of reliability" threshold, we have explained that "[i]nconsistencies and conflicts in testimony go to the credibility of the witness, not the admissiblity of the testimony, and are left

to the jury to resolve." *State v. Ragland*, 494 S.W.3d 613, 623 (Mo. App. E.D. 2016) (citing *State v. Lane*, 415 S.W.3d 740, 751 (Mo. App. S.D. 2013)).

Several features of the Victim's disclosure of hand-to-genital contact support the reliability of her statements. The Victim's forensic interview was conducted in a neutral setting, and only the Victim and Calvert were present. Antle does not identify any motive that the Victim may have had to fabricate her allegations. The Victim's knowledge of different forms of sexual contact is unexpected in a child of her age (even though the language with which she described Antle's actions may have been rudimentary). *State v. Redman*, 916 S.W.2d 787, 789 (Mo. 1996) ("in assessing content-reliability, courts should not place undue emphasis on the particular vocabulary used by a child but must determine whether knowledge of the subject matter described by the child is unexpected of a child of similar age"); *State v. Ragland*, 494 S.W.3d 613, 625 (Mo. App. E.D. 2016) (citing *State v. Lane*, 415 S.W.3d 740, 749 (Mo. App. S.D. 2013)).

Importantly, Antle concedes that the Victim's statements concerning oral sex were sufficiently reliable to be admissible – *including* statements the Victim made to Calvert during her forensic interview. By conceding the reliability of *other* allegations of sexual abuse made by the Victim during the same forensic interview, Antle acknowledges that the Victim was not prevented from providing trustworthy evidence due to the general circumstances of the interview, or due to the Victim's age, cognitive ability, language facility, or memory. While Antle points out that the Victim incorrectly answered one of the questions designed to show whether she understood the difference between the truth and a lie, the

9

Victim answered three other questions correctly, satisfying Calvert – and the circuit court – that she understood the distinction between truthful and false testimony.

In addition, the Victim volunteered her initial disclosure of hand-to-genital touching.  She identified Antle – and *only* Antle – when asked the open-ended question:  "Does anybody ever touch you anyplace on your body that feels bad, or that you don't like, or that makes you feel weird?"  When asked where Antle touched her, the Victim pointed to the vagina on the female diagram.[2]  Thus, Calvert did not introduce the idea that Antle had touched the Victim's vagina; *the Victim* independently offered that information, by being the first one in the interview to name Antle, and by pointing to that area on her body.

In addition to volunteering that Antle had inappropriately touched her vaginal area, the Victim also spontaneously offered other details in response to open-ended questions:  that the abuse had occurred more than once; that it had occurred in Antle's house, in his bedroom, while they were alone; that she was laying down on his bed when he touched her; that her sister and Antle's daughter were at the park; that the touching made her feel "funny"; and that Antle told her, "don't tell anybody."  Significantly, the Victim said that she was laying down when Antle touched her, in response to a question asking whether she was "standing up or sitting down or what?"  In this instance, the Victim rejected the alternatives offered to her in Calvert's question, and instead volunteered her own account.

---

[2] Although the Victim's gesture is not visible on the video recording, Calvert testified where she pointed; and Calvert followed up during the interview by confirming that the Victim was referring to her "girl part."

The Victim's disclosures are not suspect simply because they were prompted by questioning about possible abuse during a forensic interview. "Whenever there are allegations of sexual abuse the children must be interviewed and statements to a professional interviewer are not unreliable simply because the purpose of the interview is to discuss the abuse." *State v. Sprinkle*, 122 S.W.3d 652, 662 (Mo. App. W.D. 2003). "The central question with respect to spontaneity is 'whether the victim was prompted or pressured to make the disclosures or whether the victim freely volunteered them,'" not merely whether the statements came in response to questions asking for information about potential abuse. *State v. Ragland*, 494 S.W.3d 613, 624 (Mo. App. E.D. 2016) (quoting *Sprinkle*, 122 S.W.3d at 662).

Antle focusses on various features of the Victim's disclosure, to argue that the circuit court should have excluded her statements concerning hand-to-genital contact. Most significantly, Antle emphasizes that, out of the multiple adults to whom the Victim disclosed abuse, she *only* disclosed hand-to-genital touching to Calvert during her forensic interview. Antle stresses that this disclosure occurred months after the abuse would have occurred. He also points out that the Victim did not disclose this conduct either *before* her forensic interview (when she made disclosures concerning oral sex to her Father and Grandmother), or *after* her forensic interview (when she discussed Antle's abuse during counseling sessions with Danner).

Antle's objection goes to *the weight* of the Victim's statements, not their *admissibility*. During trial, Antle was fully entitled to challenge the credibility of Victim's statements concerning hand-to-genital contact, based on the delay in her

11

disclosure, and the fact that the relevant disclosure was made to only one adult and was not otherwise repeated. The Victim's delayed and limited disclosure does not render her statements inadmissible, however.

In *State v. Sprinkle*, 122 S.W.3d 652 (Mo. App. W.D. 2003), we held that a child's statements to various adults were not inconsistent, or inadmissible, even though the child only disclosed the full extent of the abuse after earlier incomplete disclosures. In *Sprinkle*, the child initially made only a general disclosure to her mother that the defendant had abused her; later told a school counselor only that defendant had forced her to touch his penis; and later still told a forensic interviewer that defendant had *also* touched her genitals. We explained:

> [T]he fact that [the victim] added details each time she told the story does not necessarily make her statements inconsistent. K. was only eight or nine years old when she made these statements and "[i]n cases involving such young victims and sensitive and embarrassing subject matters, it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory." Missouri courts have held that inconsistencies or contradictions in statements by young children relating to a sexual experience do not, by themselves, deprive the statements of all probative force. There is a difference between inconsistency and describing different details at different times.
>
> K.'s statements were not inconsistent with each other; she just added details. Although she may have added details in discussing the abuse with adults, . . . K. may simply have needed more time to become comfortable describing what happened and she may have remembered different things at different times. . . . K. simply described different details at different times. These additions go to the credibility of her testimony and her statements to the other witnesses, not to the admissibility of those statements, and the jury is left to resolve the issue.

122 S.W.3d at 663.

We reached a similar conclusion in *N.J.K. v. Juvenile Officer*, 139 S.W.3d 250 (Mo. App. W.D. 2004), in which a child who was four years old at the time she was abused initially denied that any abuse had occurred, and only fully disclosed the abuse months later. Despite the inconsistencies and delays, we held that the circuit court had not abused its discretion in admitting the child's extrajudicial statements.

> The fact that the child at first denied and later admitted that she had been abused is not an unusual occurrence in cases such as these and does not, in itself, render her later incriminating statements unreliable and untrustworthy. The child likely was embarrassed or ashamed and may even have been afraid that she would be blamed if she revealed what had happened. . . . [I]t is not uncommon for a sexually abused child of that age to be embarrassed and hesitant to talk about what has happened to them or to take several months to disclose the abuse. It is not always necessary that the child's statements occur at or near the time of the alleged abuse in order to be deemed reliable.
>
> Furthermore, "there is a fundamental difference between inconsistency and describing different details at different times." Here, the inconsistencies that N.K. identifies appear to be nothing more than the child simply not revealing every detail of what happened to her every time she recounted the events.

*Id*. at 257 (citations and footnote omitted); *see also State v. Ragland*, 494 S.W.3d 613, 624 (Mo. App. E.D. 2016).

Antle also points to several instances where he claims Calvert's interviewing technique was suggestive or leading. For example, when Calvert asked the Victim what Antle used to touch her, the Victim initially stated that she did not know. When Calvert then asked if Antle had touched her "with his hand or something else?", the Victim responded that he had touched her with his hand.

13

In addition, Calvert had to ask the Victim multiple questions to determine whether Antle had touched her under her clothing, or instead through her clothing. Calvert initially asked the Victim if Antle had touched her "on top of [her] clothes, like this," rubbing the top of Calvert's pant leg to demonstrate. The Victim answered in the negative. Calvert then asked if Antle went "underneath [her] clothes," demonstrating by touching her own skin under the sleeve of her short-sleeved shirt. Victim again answered "no." Only when Calvert followed up by asking if Antle had "touch[ed] [her] actual skin, or did he touch [her] clothes," did the Victim respond that "[h]e touched my clothes." The Victim then agreed that Antle had touched her "on top of [her] clothes"; when asked to describe *how* he touched her, the Victim responded, "[w]ith his hand," and demonstrated by pointing to the vaginal area of the female anatomical drawing with her finger.

We recognize that in these portions of the Victim's forensic interview, Calvert had to ask the Victim follow-up questions to elicit further information from the Victim concerning the manner in which Antle had abused her. It is significant that the Victim was very young – only three years old at the time of the abuse, and only four when she was interviewed. The Victim exhibited the same reticence in describing the hand-to-genital contact as she did in later describing oral sex – disclosures which Antle concedes are sufficiently reliable to be admitted. Calvert testified that she interviewed the Victim using the CornerHouse method, which was then the standard interviewing protocol used in Missouri, and that she endeavored to use non-leading, open-ended questions, and to take the Victim's developmental state into consideration when formulating her questions. Calvert testified that she had been trained to ask follow-up

14

questions of an interviewee when necessary, but not to herself introduce new allegations or information. In making its reliability determination, the circuit court was entitled to rely on Calvert's training and experience, and her professional opinion that her questioning was not improperly suggestive. *State v. Ragland*, 494 S.W.3d 613, 624 (Mo. App. E.D. 2016); *State v. Wadlow*, 370 S.W.3d 315, 320 (Mo. App. S.D. 2012).

With respect to the questioning concerning the instrumentality which Antle used to touch her, we note that the Victim did not simply agree with everything Calvert suggested: when Calvert asked if Antle had touched her with a ruler, the Victim denied it. Later, the Victim referred on her own to Antle touching her with his hand, in response to an open-ended question asking how he had touched her.

With respect to the questions asking whether Antle had touched the Victim over or under her clothing, Calvert testified, and the recording reflects, that the Victim was confused by the initial questions, which asked whether Antle had touched her "on top of [her] clothes," or instead "underneath [her] clothes." The circuit court could properly conclude that the Victim finally understood when Calvert rephrased her questions, and asked whether Antle "touch[ed] [her] actual skin" or instead simply "touch[ed] [her] clothes" – and that she then provided a truthful response that Antle had touched her vagina through her clothing. *See Ragland*, 494 S.W.3d at 624 (holding that circuit court did not abuse its discretion in admitting statements during a forensic interview, even though the interviewer "prompted [the victim] with questions and rephrased certain questions to combat [the victim's] confusion").

15

Antle cites *State v. Costa*, 11 S.W.3d 670 (Mo. App. W.D. 1999), in which this Court questioned the trustworthiness of statements made by a minor (Jennifer) to two adults: a Division of Family Services social worker (Melissa Welpman); and a psychological counselor (Loletta Combs). *Costa* is distinguishable, however, because the questioning in that case was far more aggressive than Calvert's questioning here. The Court in *Costa* emphasized that "when Welpman asked Jennifer if anyone had ever touched her in a bad way, it took repeated questioning before Jennifer would say someone had touched her in a bad way." *Id.* at 681. In her counseling sessions with Combs, Jennifer initially provided only the vague response that she was living with a foster family "because her father had done something he was not supposed to do to kids." *Id.* at 682. Jennifer only provided further information concerning the abuse after Combs presented Jennifer with anatomical dolls, and stated that one of them would represent Jennifer, and one her abuser. *Id.* The Court observed that "Combs' use of the anatomical dolls was more of a pressure tactic than an open ended questioning," and that "Combs persisted when she did not get the response she wanted." *Id.* at 683.

Unlike in *Costa*, in this case the Victim identified Antle as the lone individual who had touched her inappropriately, in her vaginal area, in response to open-ended questions. While Calvert may have been required to ask a limited number of follow-up questions to elicit certain further details from the Victim, the questioning is completely unlike the "pressure tactics" and "persist[ent]" questioning at issue in *Costa*.

Antle contends that the Victim provided very limited information concerning the touching, beyond the fact that it occurred. While the Victim may not have provided a detailed description, she did provide numerous details, including: where the touching occurred; how frequently it occurred; the position she was in when it occurred; where her sister and Antle's daughter were; how it made her feel; and what Antle said to her. We again emphasize the Victim's youth, and her obvious reluctance to describe what must have been traumatic – and confusing – events. The circuit court did not abuse its discretion when it concluded that the credibility of the Victim's account was for the jury to determine, not for the court to decide in making an admissibility ruling under § 491.075.1.

Antle also complains that the circuit court adopted the State's proposed order verbatim. We have repeatedly admonished circuit courts to be cautious in adopting orders proposed by a litigant without modification. *See*, *e.g.*, *Sporleder v. Sporleder*, 655 S.W.3d 1, 15 n.16 (Mo. App. W.D. 2022); *Patterson v. State*, 576 S.W.3d 240, 247-48 (Mo. App. W.D. 2019) (citing and quoting *State v. Skillicorn*, 22 S.W.3d 678, 690-91 (Mo. 2000), and *State v. Phillips*, 940 S.W.2d 512, 521 (Mo. 1997)). In the earlier appellate proceedings, we were required to remand this case to the circuit court for findings of fact which properly addressed the reliability factors applicable under § 491.075. We are troubled that, in response to our earlier remand, the circuit court simply adopted verbatim an order proposed by the State, even though that order failed to explicitly address the limited out-of-court statements Antle continued to challenge. The circuit court's

adoption of the State's proposed order has complicated our review; it is not, however, independently reversible.

Although it may be a close question, and although a reasonable jurist could have reached a different conclusion, we cannot find that the circuit court's evidentiary ruling was "clearly against the logic of the circumstances and . . . so arbitrary and unreasonable as to shock [our] sense of justice." *State v. Joyner*, 458 S.W.3d 875, 880 (Mo. App. W.D. 2015).

## Conclusion

The circuit court's judgment, convicting and sentencing Antle for first-degree statutory sodomy and first-degree child molestation, is affirmed.

_____
Alok Ahuja, Judge

All concur.